[Cite as *Keybank Narl. Assn. v. Thalman*, 2016-Ohio-2832.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102624**

## KEYBANK NATL. ASSN., TRUSTEE

PLAINTIFF-APPELLEE

vs.

## HEATHER THALMAN, ET AL.

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case No. 2012ADV179748

**BEFORE:** Laster Mays, J., Keough, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 5, 2016

-i-

## ATTORNEYS FOR APPELLANT

Mark E. Porter
6480 Rockside Woods Boulevard, South
Suite 360
Independence, Ohio 44131

Rebecca Yingst Price
Law Office of Rebecca Yingst Price
3611 Prospect Avenue, East
Cleveland, Ohio 44115

## ATTORNEYS FOR APPELLEES

### For KeyBank National Association, Trustee

Kerin Lyn Kaminski
Giffen & Kaminski, L.L.C.
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114

Edward A. Proctor
Connick Law, L.L.C.
25550 Chagrin Boulevard, Suite 101
Cleveland, Ohio 44122

### For Cynthia Esformes, et al.

Martin T. Galvin
Adam M. Fried
Adriann S. McGee
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

ANITA LASTER MAYS, J.:

{¶1} The defendants-appellants Heather Thalman, Margaret R. Nelson, deWayne G. Richey III, and Douglas M. Richey (collectively, the "Clough Heirs") appeal from the trial court's decision to grant summary judgment in favor of plaintiff-appellee KeyBank Natl. Assn. ("KeyBank") as to all of the Clough Heirs' claims. After a review of the record, we reverse the trial court's decision and remand for further proceedings.

I. Facts and Procedural Posture

{¶2} Howard A. Couse ("Howard Couse"), an attorney who is the author of several law textbooks, created a trust ("Couse Trust") for the benefit of his children and grandchildren from the proceeds of the sale of the textbooks. Upon his death, KeyBank became the successor trustee of this trust. Following Howard Couse's death, the Couse Trust beneficiaries were his daughter, Margaret R. Schlitt ("Margaret Schlitt"), and her husband, Howard Schlitt ("Howard Schlitt"). In 1966, when Margaret Schlitt died, her children Jeanne Schlitt Clough ("Jeanne Clough") and Howard H. Schlitt ("Dr. Schlitt") became the trust income beneficiaries. The children of Jeanne Clough and Dr. Schlitt became remainder beneficiaries.

{¶3} From 1957 until 2006, the beneficiaries of the trust received only income distributions from the trust, and it was administered without any changes or conflicts. However, in July 2006, Dr. Schlitt sent a letter to KeyBank stating that the income from

the Couse Trust was pathetic and totally inadequate. Dr. Schlitt also threatened that if the performance of the trust did not improve immediately, he would move the trust to be managed by another trustee. KeyBank setup a meeting with Jeanne Clough and Dr. Schlitt to discuss options. In addition to Jeanne Clough, Dr. Schlitt, and the trust portfolio manager, three of Jeanne Clough's four children attended the meeting; Heather Thalman, Margaret Nelson, and Douglas Richey (collectively, the "Schlitt Heirs"). At the meeting, Jeanne Clough stated that she did not want the Couse Trust to be moved and managed by someone she did not know. She also did not want the trust assets restructured for income. Her goal was the long-term growth of the trust assets.

{¶4} Dr. Schlitt, however, wanted to restructure the trust to receive monthly income. In response to the conflict between the siblings pertaining to the goals of the trust, KeyBank suggested that the Couse Trust be split to protect the different goals. Both Jeanne Clough and Dr. Schlitt agreed. After the agreement, KeyBank sent a letter to the siblings on the status of the split trust. KeyBank told them, in the letter, that they were still working with the trust's counsel to clarify the issues in protection of the family interests. Two years later and five weeks after Jeanne Clough's death, KeyBank wrote another letter to the heirs informing them that the Couse Trust had been split into two separate accounts with separate account numbers. The assets invested for the Clough Heirs were titled under one name, "For the Benefit of Jeanne Schlitt Clough ("FBO JSC"), and those for Dr. Schlitt were titled, For the Benefit of Howard H. Schlitt ("FBO HHS"). These trusts were separated by KeyBank on December 26, 2008, and the

information from each trust was communicated to each of the separate parties. The account information from FBO JSC was sent to the Clough Heirs. The account information from FBO HHS was sent to Dr. Schlitt.

{¶5} Until Dr. Schlitt's death in 2011, the Clough Heirs only received income from the FBO JSC account, and Dr. Schlitt only received income from the FBO HHS account. The income distributions during this time were never made based on the total balance of the Couse Trust, only the balances of the respective FBO accounts. Also during this time, the income beneficiaries never received account information or account statements from both FBO accounts, just from the ones they were beneficiaries to. KeyBank, as well the heirs, treated each FBO account as separate. Several letters from KeyBank confirmed that the two accounts were entirely separate and that the Clough Heirs would receive the balance from the FBO JSC account, and the Schlitt Heirs would receive the balance of the FBO HHS account. In addition, the Clough Heirs were never informed that Dr. Schlitt was receiving $12,000 monthly distributions from the FBO HHS account.

{¶6} In 2009, the Clough Heirs received a letter from the current KeyBank assistant vice president and trust officer, stating, "the trust will continue for the benefit of you and your siblings. It will be split into four equal shares for ease of administration. The current market value is $653,605 (including income cash). Your one-fourth share is approximately $163,401." Other letters from KeyBank were consistent with the determination that the trusts were separate, and the Clough Heirs should expect 100% ownership of the FBO JSC account.

{¶7} Three days after Dr. Schlitt's death, KeyBank informed the Clough Heirs that they were taking steps to distribute the trust, and that the Clough Heirs would each receive one-quarter of the FBO JSC account. The Schlitt Heirs also requested that KeyBank liquidate the remaining monies in the FBO HHS and the FBO JSC account. KeyBank informed the Schlitt Heirs that they would receive just the balance from the FBO HHS account. The Schlitt Heirs threatened to report KeyBank to the Financial Industry Regulatory Authority ("FINRA") and the Securities Exchange Commission ("SEC"). As a result, KeyBank changed the final distribution and informed the Schlitt Heirs that the FBO JSC and the FBO HHS accounts would be combined and then split amongst the Clough Heirs and the Schlitt Heirs.

{¶8} The combination plan took $237,000 from the FBO JSC account for distribution to the Schlitt Heirs. KeyBank notified the Clough Heirs of the joining of accounts and redistribution of the balances on July 29, 2011. In this written communication, KeyBank notified the Clough Heirs that the FBO JSC accounts would not be split between the four Clough Heirs, $382,233 had been distributed to Dr. Schlitt, the assets from the FBO JSC and the FBO HHS accounts would be combined and split between the Clough Heirs and the Schlitt Heirs. The combining of the accounts resulted in $237,000 being taken from the FBO JSC account for distribution to the Schlitt Heirs. KeyBank notified the Clough Heirs of the joining of accounts and redistribution of the balances on July 29, 2011.

{¶9} The Clough Heirs disputed the fact that the trusts be combined and

distributed among both sets of heirs. On June 18, 2012, KeyBank filed a petition for declaratory judgment regarding the final trust distribution. The Clough Heirs responded with a motion for a more definitive statement. KeyBank then filed an amended complaint to which the Clough Heirs filed a counterclaim against KeyBank alleging that KeyBank breached its fiduciary duty. In 2013, the trial court issued its decision on distribution of the trust, that it be divided equally between the Clough and Schlitt heirs. On June 30, 2014, both the Clough Heirs and KeyBank filed motions for summary judgment. The trial court granted summary judgment in favor of KeyBank as to all of the Clough Heirs' claims, and ordered the Clough heirs to pay KeyBank's attorney fees. As a result the Clough Heirs have filed this timely appeal.

{¶10} The Clough Heirs assign five assignments of error for our review.

I.    The trial court erred to the prejudice of Clough Heirs when it granted summary judgment in favor of KeyBank where the evidence adduced in this matter precluded such a grant pursuant to Civ.R. 56(C).

II.    The trial court erred to the prejudice of the Clough Heirs by failing to address the breach of trust claims under R.C. 5810 asserted by the Clough Heirs.

III.    The trial court erred to the prejudice of the Clough Heirs in finding that the Howard A. Couse Trust had to be distributed equally to the Clough Heirs and the Schlitt Heirs upon the death of Howard H. Schlitt as a matter of law.

IV.    The trial court erred to the prejudice of the Clough Heirs in ordering the apportionment of KeyBank's fees to the trust beneficiaries; and

V.    The trial court erred to the prejudice of the Clough Heirs in finding

that the Clough Heirs had not sustained damages from KeyBank's actions,

and therefore could not establish all the elements necessary to succeed on their claim for breach of fiduciary duty against KeyBank.

Although the Clough Heirs assign five assignments of error for our review, they have only presented three issues. In the first assignment of error, the appellants argue that the trial court erred in granting summary judgment for their three claims in the second, third, and fifth assignments of error. Therefore, we review the first assignment of error combined with the second, third, and fifth assignments of error. The fourth assignment of error is moot because we are remanding the case to the trial court.

## II. Summary Judgment

### A. Standard of Review

**{¶11}** The trial court granted summary judgment as to all of the Clough Heirs' claims. "This court reviews the lower court's granting of summary judgment de novo." *Baiko v. Mays*, 140 Ohio App.3d 1, 7, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997); *Dragmen v. Swagelok Co.*, 8th Dist. Cuyahoga No. 101584, 2014-Ohio-5345, ¶ 15. "An appellate court affords no deference to the trial court's ruling and conducts an independent review of the record to determine whether summary judgment is appropriate." *K.S. v. Pla-Mor Roller Rink*, 8th Dist. Cuyahoga No. 103139, 2016-Ohio-815, ¶ 7. "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul*, 71 Ohio App.3d 46, 50, 593 N.E.2d 24 (8th Dist.1990).

**{¶12}** "Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party." *Pla-Mor Roller Rink* at ¶ 8.

**{¶13}** "The party moving for summary judgment has the initial burden to show that no genuine issue of material fact exists." *Id*. at ¶ 9. "In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991)." Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Id*. at 296.

> "The movant cannot simply rely on conclusory assertions that the nonmovant has no evidence — the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims."

*Id*. at 293.

**{¶14}** "The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings." *Id*. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id*.; *see Citibank, N.A. v. Katz*, 8th Dist. Cuyahoga No. 98753, 2013-Ohio-1041, ¶ 15. "If the nonmoving party establishes the existence of a genuine issue of material fact, then the trial court should deny the motion for summary judgment." *Pla-Mor Roller Rink* at ¶ 11.

**B.     Breach of Trust**

**{¶15}** In their second assignment of error, the Clough Heirs argue that the trial court erred when it granted summary judgment and failed to address their breach of trust claims. "Under R.C. 5810.02, a trustee who commits a breach of trust is liable to the beneficiaries for damages for breach of trust." *Wills v. Kolis*, 8th Dist. Cuyahoga No. 93900, 2010-Ohio-435, ¶ 19. "Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801. to 5811. of the Revised Code." R.C. 5808.01. "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust." *Shuster v. N. Am. Mtge. Loan Co.*, 139 Ohio St. 315, 343, 40 N.E.2d 130 (1942).

**{¶16}** KeyBank informed the Clough Heirs that the Couse Trust had been split into two different trusts; the Clough Trust and the Schlitt trust. The record supports that KeyBank treated these two accounts as separate. The accounts had two distinctive account numbers, two different account names, and two different account statements. The Clough Heirs only received account statements from the FBO JSC account, and Dr. Schlitt received account statements from the FBO HHS account.

**{¶17}** KeyBank argues that the language of the Couse Trust did not allow a split into two halves. If this is true, then KeyBank induced the families to believe that the trust had been split. KeyBank sent a letter to the Clough Heirs stating that the FBO JSC account would be split into four equal shares for each of the siblings. KeyBank also

notified the Schlitt Heirs that the FBO HHS account would be divided equally between them until they objected. When the Schlitt Heirs complained, KeyBank combined the two accounts that resulted in $237,000 being taken from the FBO JSC account for distribution to the Schlitt Heirs. From the record, the nonmoving party has set forth facts showing a genuine issue of material fact for trial exists as to KeyBank's failure to manage the trust in good faith. Therefore, appellants' second assignment of error is sustained.

### C. Equally Distributed Trust

{¶18} In their third assignment of error, the appellants argue that the trial court erred to the prejudice of the Clough Heirs in finding that the trust had to be distributed equally to the Clough Heirs and Schlitt Heirs. KeyBank made the decision to distribute the trust equally between the two sets of heirs, after the Schlitt Heirs threatened to file a complaint. The trial court dismissed the Clough Heirs' claims that the distribution was prejudicial. KeyBank argued that the trusts had to be combined because of the language in R.C. 5804.17,

which states,

> [a]fter notice to the qualified beneficiaries, a trustee may combine two or more trusts into a single trust or divide a trust into two or more separate trusts if the result does not substantially impair the rights of any beneficiary or have a materially adverse effect on the achievement of the purposes of the trust.

However, splitting of the Couse Trust did not substantially impair the rights of either beneficiary; Jeanne Clough and Dr. Schlitt. Both wanted to use the trust for different

purposes. Jeanne Clough wanted to leave the trust untouched and for the benefit of her children. Dr. Schlitt wanted to use the income from the trust to finance his living expenses. Because their goals were different, Jeanne Clough and Dr. Schlitt agreed the trust could be split.

{¶19} According to the Official Comments of R.C. 5804.17, "division of trusts is often beneficial and, in certain circumstances, almost routine. Division of trusts is frequently undertaken due to a desire to obtain maximum advantage of exemptions available under the federal generation-skipping tax." Although splitting the trust was not detrimental to the rights of the beneficiary, combining them was. The Clough Trust was for the benefit of the Clough Heirs. KeyBank sent notice to the Clough Heirs and specifically enumerated their shares. By combining the two trusts, the record supports that the result would substantially impair the Clough Heirs and may have a materially adverse effect on the achievement of Jeanne Clough's purpose of her share of the trust because Jeanne Clough and Dr. Schlitt had different investment objectives and financial needs. Dr. Schlitt wanted to use his share of the trust to finance his health and living expenses. We find that a genuine issues of material fact exist regarding prejudice to the Clough Heirs to distribute the Couse Trust equally amongst the Clough Heirs and Schlitt Heirs. Appellants' third assignment of error is sustained.

### D. Damages and Fiduciary Duty

{¶20} In the fifth assignment of error, the Clough Heirs argue that the trial court erred in finding that the Clough Heirs had not sustained damages from KeyBank's

actions, and therefore could not establish all the elements necessary to succeed on their claim for breach of fiduciary duty against the plaintiff.

> A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking. A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom.

*All Star Land Title Agency, Inc. v. Surewin Inv., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729, ¶ 36.

{¶21} "In order to prove a breach of fiduciary duty claim, the plaintiff must establish (1) the existence of a duty arising from a fiduciary relationship* * *." *Gracetech Inc. v. Perez*, 8th Dist. Cuyahoga No. 96913, 2012-Ohio-700, ¶ 11. "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ford v. Brooks*, 10th Dist. Franklin No. 11AP-664, 2012-Ohio-943, ¶ 11. "A fiduciary has a duty to act for someone else's benefit and may not possess an interest that might conflict with the interest of the person to whom the fiduciary owes a duty." *Id.* KeyBank's duty is not in question. It served as the trustee for the two trust accounts.

> The duties and responsibilities owed by a trustee to the trust beneficiaries are well established. These duties generally include the duty to be loyal to the trust beneficiaries, to keep and render clear and accurate accounts with respect to the administration of the trust, to keep trust property separate and not commingle it with the trustee's personal property, to make the trust property productive, to pay income to the trust beneficiaries at reasonable

intervals, and, finally, to account and pay over the corpus on termination of the trust.

*Sredniawa v. Sredniawa*, 8th Dist. Cuyahoga No. 86607, 2006-Ohio-1597, ¶ 13.

**{¶22}** "In order to prove a breach of fiduciary duty claim, the plaintiff must establish * * * (2) a failure to observe the duty * * *." *Gracetech* at ¶ 11. KeyBank, as the trustee of the Couse Trust, had a duty to "keep and render clear and accurate accounts with respect to the administration of the trust." *Sredniawa* at ¶ 13. KeyBank argues that the Couse Trust could not be split into two halves, but yet it operated the trust as if it had been split. If it in fact were one trust, accurate account statements were not sent to the trust beneficiaries. Instead, the account statements reflected that the trusts had been in fact divided. KeyBank's argument is that the trusts were not divided. This argument is incorrect. The record reflects that the trusts were in fact divided into two separate trust. There is an issue of material fact to be decided in the lower court as to whether KeyBank breached their fiduciary duty by combining the trusts and preparing the balance for distribution between all the heirs. Likewise, there is an issue as to whether the Couse Trust was never to be divided and if KeyBank breached its duty by communicating to the heirs that it was divided but in fact was not.

**{¶23}** "In order to prove a breach of fiduciary duty claim, the plaintiff must establish * * * (3) an injury resulting proximately therefrom." *Gracetech* at ¶ 11. "Proximate cause exists when plaintiffs show that there is a ca[us]al connection between the conduct complained of and the resulting damage or loss." *DeMeo v. Provident Bank*, 8th Dist. Cuyahoga No. 89442, 2008-Ohio-2936, ¶ 61. Before KeyBank

combined the two trust accounts, the Clough Heirs were informed by KeyBank that the current market value of the trust was $653,605, and each of the Clough Heirs would receive approximately $163,401. However, when KeyBank decided to combine the two trust accounts and distribute the money amongst the Clough and Schlitt Heirs, $237,000 was taken from the FBO JSC for the distribution to the Schlitt Heirs. Thus resulting in a potential $237,000 injury to the Clough Heirs. The Clough Heirs have demonstrated that a genuine issue for trial exists. Appellants' fifth assignment of error is sustained.

## III.    Conclusion

**{¶24}** Appellant's first assignment of error asks this court to generally overrule the trial court's grant of summary judgment. Having sustained assignments of error two and three, we summarily sustain appellant's first assignment of error. We find that the trial court erred in granting summary judgment in favor of KeyBank on all claims, and the Clough Heirs have established that there are genuine issues of material fact regarding KeyBank's breach of fiduciary duty, breach of trust claims and prejudice in distributing the trust equally. Because we are remanding this case, the issue of attorney fees, as raised in the fourth assignment of error, is moot. We reverse the trial court's decision and remand this case to the trial court for further proceedings consistent with this opinion.

**{¶25}** The judgment of the trial court is reversed and remanded.

It is ordered that the appellant recover from appellee costs herein taxed.

The court finds that there is reasonable ground for this appeal.

It is ordered that a special mandate issue out of this court directing the probate

court division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR