[Cite as *Keybank Natl. Assn. v. Thalman*, 2018-Ohio-3367.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106250**

---

**KEYBANK NATIONAL ASSOCIATION, TRUSTEE**

PLAINTIFF-APPELLEE

vs.

**HEATHER THALMAN, ET AL.**

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2012 ADV 179748

**BEFORE:** Stewart, J., Kilbane, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEYS FOR APPELLANTS**

Mark E. Porter
1180 Bell Street, Suite 4
Chagrin Falls, OH 44022

Rebecca Yingst Price
Law Office of Rebecca Yingst Price
3611 Prospect Avenue, East
Cleveland, OH 44115

**ATTORNEYS FOR APPELLEE**

Kerin Lyn Kaminski
Karen L. Giffin
Tina Y. Rhodes
Giffen & Kaminski, L.L.C.
1300 East Ninth Street, Suite 1600
Cleveland, OH 44114

Adam M. Fried
Reminger Co., L.P.A.
101 West Prospect Street, Suite 1400
Cleveland, OH 44115

MELODY J. STEWART, J.:

{¶1} This is an appeal from a declaratory judgment, issued after a bench trial in the probate court, that declared the rights of beneficiaries to a trust, as well as the responsibilities of the trustee in dividing the trust corpus.

I. Background

{¶2} In 1935, Howard Couse established a trust (the "Couse Trust") that provided income for his two grandchildren, Jeanne Clough and Howard Schlitt. Upon the death of either Clough and Schlitt, their heirs would become trust beneficiaries. Upon the death of both Clough and Schlitt, the trust corpus would be divided into two, equal shares: one share payable to Clough's children and heirs Heather Thalman, DeWayne Richey III, Douglas Richey and Margaret Nelson — the "Clough heirs"; the other share payable to Schlitt's children and heirs Cynthia Desformes, Andrea Weaver, and Lorraine Schlitt — the "Schlitt heirs." The trust authorized the trustee to pay the beneficiaries any sum deemed necessary for their support, ease, and maintenance.

{¶3} By 2006, Clough and Schlitt had developed different ideas on how the trustee, KeyBank, should manage the trust investments. Clough wanted a conservative investment approach in order to maximize long-term growth of the trust corpus. Schlitt wanted a more aggressive investment approach in order to maximize monthly income. KeyBank was unsure if it had the authority to divide the Couse Trust. At the time, Clough and Schlitt were also the beneficiaries of a second trust — the Margaret Schlitt Trust — which specifically authorized division of the trust corpus. KeyBank told Clough and Schlitt that it could divide the Margaret Schlitt Trust, but because the Couse Trust lacked similar language specifically authorizing division, it was "working with our Internal Trust counsel to clarify the issues in protecting your respective family's [sic] interests in the Couse Trust if it were divided as well."

**{¶4}** KeyBank apparently took no action with regard to dividing the trust until late 2008, when Jeanne Clough died. Several weeks after her death, KeyBank divided the trust into two investment accounts: one for the benefit of Clough ("FBO JSC"); the other for the benefit of Schlitt ("FBO HHS"). Trust income would be paid to the Clough heirs from the Clough account, while trust income to Howard Schlitt would be paid from the Schlitt account. The beneficiaries were given account statements only from the respectively divided accounts. KeyBank informed the Clough heirs that they would be entitled to quarterly income distributions from the FBO JSC account until Schlitt's death. KeyBank also told one of the Clough heirs that following Schlitt's death, "the Couse Trust FBO JSC will terminate and the remaining proceeds will be distributed equally between you and your siblings." In a March 2009 letter sent after Jeanne Clough's death, KeyBank informed each of the four Clough heirs that the "Howard A. Couse Trust * * * will continue for the benefit of you and your siblings (emphasis sic)." KeyBank also informed the four Clough heirs that "[t]he current market value is $653,605 (including income cash). Your one-fourth share is approximately $163,401." (Emphasis sic.)

**{¶5}** In April 2008, Schlitt, through his long-time companion, made a request for additional income because his declining health required intensive medical care. Exercising its discretionary trust authority to provide for the "support, ease and maintenance" of the beneficiaries, KeyBank paid Schlitt $12,000 per month exclusively from the Schlitt account. KeyBank's internal documentation of the discretionary distributions to Schlitt specifically referenced the FBO HHS account and, under a heading called "Document Dispositive Provisions," stated "Upon the death of Howard H. Schlitt, the trust will distribute to his then living lineal descendants." The discretionary payments continued until Schlitt died in 2011. None of the Clough heirs were aware that KeyBank was making additional payments to Schlitt because they were not informed by KeyBank and they were not receiving any statements for the FBO HHS account.

**{¶6}** When Schlitt died, the Clough heirs notified KeyBank, seeking liquidation of the FBO JSC account. KeyBank replied to one of the Clough heirs, noting that the FBO JSC trust share had been segregated for the "equal benefit of you and your siblings" and that "[y]ou are correct in that pursuant to the terms of the Couse Trust FBO JSC, Dr. Schlitt's death will result in the termination of the Howard A. Couse Trust FBO JSC in equal shares to you and your siblings."

**{¶7}** In response to demands by the Schlitt heirs to liquidate the Couse Trust, KeyBank informed them that it could not yet act on liquidation "due to a difference of interpretation of the final dispositive provisions of the Howard A. Couse Trust." KeyBank told the Schlitt heirs that its trust counsel was reviewing the trust agreement and "[i]t may be that both of the Howard Couse Trusts, your father's and Jeanne Clough's portions, will be combined and then divided, per stirpes, amongst you and your siblings and Jeanne's four children as well." KeyBank told the Schlitt heirs that if the two accounts had to be recombined, it would need approval from the Clough heirs on complete liquidation. The Schlitt heirs responded by threatening KeyBank with legal action should it fail to put the trust assets into their account. The following day, KeyBank informed the Schlitt heirs that "our trust counsel has determined that *both* of the Howard Couse Trusts (the one for the benefit of your father and the other for the benefit of Jeanne Clough) are to be distributed 50% to the three of you and 50% to the four Clough children." (Emphasis sic.) KeyBank reaffirmed to the Schlitt heirs that "you and your sisters will split 50% of your father's trust and also split 50% of the Jeanne Clough Trust." At the time, the FBO JSC account was valued at $934,000; the additional distributions to Howard Schlitt left $460,000 in the FBO HHS account.

**{¶8}** The Clough heirs objected to combining the two investment accounts. They maintained that KeyBank had actually split the trust corpus into two separate trusts and that merging them back into a single trust would substantially impair their rights as beneficiaries given the amounts paid to Schlitt. They believed that the Schlitt heirs should be solely affected by the income paid to Schlitt during his last years.

**{¶9}** KeyBank disagreed that it had split the Couse trust into two separate trusts, claiming that it had merely split the trust into two investment accounts that it recombined before liquidating the Couse Trust. It sought a declaratory judgment regarding the manner in which it should distribute the trust corpus. The Clough heirs filed counterclaims against KeyBank alleging that it committed a statutory breach of trust by failing to keep the current beneficiaries of the trust reasonably informed about the administration of the trust and breached its fiduciary duty in the manner in which it managed the Couse trust. On cross-motions for summary judgment, the court ruled that KeyBank had not, and could not, split the Couse trust into two separate trusts. The court granted summary judgment to KeyBank and ordered the Clough heirs to pay KeyBank's attorney fees.

**{¶10}** We reversed the summary judgment on appeal. *KeyBank Natl. Assn. v. Thalman*, 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832. As an overriding holding, we found the evidence showed that "KeyBank informed the Clough Heirs that the Couse Trust had been split into two different trusts; the Clough Trust and the Schlitt trust." *Id.* at ¶ 16. We reached this conclusion on evidence that the trusts were given different names, different account numbers, and had separate statements mailed to the beneficiaries of the respective accounts. *Id.* In addition, we cited evidence that KeyBank individually informed the Clough and Schlitt heirs that upon Schlitt's death, the respective FBO accounts would be liquidated and divided among the siblings. *Id.* at ¶ 17. We found an issue of material fact existed on whether KeyBank managed the trust in good faith. *Id.*

{¶11} With respect to the question of whether the court erred by finding that KeyBank should combine and equally distribute the trusts, we rejected KeyBank's assertion that R.C. 5804.17 required it to combine the two investment accounts. Noting that the statute allowed division of a trust "if the result does not substantially impair the rights of any beneficiary or have a materially adverse effect on the achievement of the purposes of the trust," we found that KeyBank could split the trust because doing so did not substantially impair the rights of either Jeanne Clough or Howard Schlitt. *Id*. at ¶ 18. We found that dividing the trust not only accommodated the separate investment goals of Clough and Schlitt, but that the aggressive investment approach desired by Schlitt worked to his benefit to finance his health and living expenses. *Id*. at ¶ 19. We found that recombining the trusts would have a materially adverse effect on Clough's investment goals and that a question of fact existed "regarding prejudice to the Clough Heirs to distribute the Couse Trust equally amongst the Clough Heirs and Schlitt Heirs." *Id.*

{¶12} Lastly, we considered the question of whether the court erred by finding that the Clough heirs did not make out a claim for breach of fiduciary duty because they did not sustain any damages. Reiterating that "the trusts had been in fact divided[,]" *id*. at ¶ 22, we found that by recombining the trusts, KeyBank took $237,000 from the FBO JSC account and placed it in the FBO HHS account. *Id*. at ¶ 23. We found that the $237,000 was a "potential injury to the Clough heirs." *Id*.

{¶13} On remand, the court conducted a trial on the issues over the Clough heirs' objection arguing that we had already determined that KeyBank split the Couse Trust into two separate trusts. In extensive findings of fact and conclusions of law, the court found that the trust had been created for the lifetime benefit of Clough and Schlitt, giving them the right to equal income distributions and discretionary distributions for their support, ease, and maintenance. The court characterized the trust as a "pot" trust, meaning that "all of the beneficiaries in the same beneficiary class share from one pot. A reduction of the assets of the trust for one beneficiary necessarily results in a reduction for all beneficiaries upon final distribution." The court found no trust language that would allow the trust to be divided.[1] It further found that KeyBank did not split the trust into two separate trusts, but created two investment sub-accounts for the single trust.

---

[1]Although there was no trust language authorizing dividing the trust, we found no language prohibiting division of the trust either.

{¶14} The court found that KeyBank did not breach its fiduciary duty to the Clough heirs by creating two investment sub-accounts. The court found that the trust instrument granted the trustee "unrestricted power to manage all property held by it hereunder as if the absolute owner itself," and that KeyBank did not require beneficiary approval to carry out transactions. It stated that "[a]lthough the money was divided into two sub-accounts for investment purposes and for current lifetime distributions, the Couse Trust itself was never divided into separate and distinct trusts." The court rejected assertions by the Clough heirs that KeyBank's trust officer sent letters to them indicating that the trust had been split. The court "was persuaded by [the trust officer's] explanation as to what the letters he authored meant and by the fact that [the trust officer] never thought that the Couse Trust had been permanently divided because the Couse Trust did not allow for permanent division."

{¶15} With respect to claims that KeyBank breached its fiduciary duty to the Clough heirs by making distributions to Schlitt, the court found KeyBank acted within the scope of its discretion by distributing additional funds to Schlitt to provide for his "ease." The court found that KeyBank acted reasonably upon information provided to it by Schlitt's long-time companion, whom the Clough heirs considered as their "aunt." The court also found no reason to believe that KeyBank would have exercised its discretion any differently had it required additional verification of Schlitt's medical expenses.

**{¶16}** The court also rejected assertions by the Clough heirs that KeyBank breached its fiduciary duty because letters sent by KeyBank to the beneficiaries led them to believe that the Couse trust had been permanently changed in a way that altered the manner in which the trust corpus would be distributed. Conceding that KeyBank's correspondence to the heirs "are not a model of clarity," the court found that the correspondence was "not false and did not promise the Clough Heirs that the dispositive portion of the Couse Trust had been changed." It found that the trust officer's communications to the Clough heirs used language consistent with the position that the trust had not been split, noting for example that the trust officer informed the Clough heirs that the trust had been divided "into two equal shares" with the creation of the two investment accounts designed to accommodate Schlitt's and the Clough heirs' investment goals. The court found that "[t]he word 'shares' in and of itself denoted that the Couse Trust remains as one trust with separate parts or shares." The court found that the Clough heirs "made an assumption regarding what the letters meant."

**{¶17}** The court found that the Clough heirs failed to prove that they suffered any damage as a result of any of their claims for breach of fiduciary duty. The court found that even if the Clough heirs justifiably relied on KeyBank's correspondence to arrive at the expectation of a greater share of the trust corpus, they failed to show detrimental reliance on that expectation by making any life decisions or altered investment patterns based on that expectation.

**{¶18}** Finally, the court ordered the Clough heirs to pay all of KeyBank's attorney fees incurred after the court granted the Schlitt heirs' first motion for summary judgment. The court did not actually determine the amount of attorney fees, other than to state that KeyBank's fees "shall be paid at the usual and customary hourly rates charged by KeyBank's lawyer to KeyBank and for all the hours approved for payment by KeyBank." The court certified no just reason for delay.

## II. Law of the Case

**{¶19}** In their first assignment of error, the Clough heirs raise a question of law concerning the law-of-the-case doctrine. They claim that on appeal from the summary judgment granted to KeyBank and the Schlitt heirs, this court decided as a matter of law that "the trusts were in fact divided into two separate trust." *KeyBank,* 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 22. They maintain that the court ignored this finding, thus erring when it decided at trial that KeyBank did not split the Couse trust into two separate trusts.

**{¶20}** "The law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Huntington Natl. Bank v. Dixon*, 8th Dist. Cuyahoga No. 101273, 2015-Ohio-1735, ¶ 9 (citations and internal quotations omitted). The law-of-the-case doctrine is a rule of practice that ensures consistency of results in a case, avoids endless litigation of settled issues, and preserves the structure of superior and inferior courts as designed by the Ohio Constitution. *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15; *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

**{¶21}** We emphasize at the outset that KeyBank initiated this case by seeking a declaratory judgment that the Couse Trust "is now distributable in two equal shares; one half (½) of the Couse Trust to the Clough Heirs and one half (½) to the Schlitt Heirs." Fundamental to the request was whether the Couse Trust existed as a single trust (as argued by KeyBank) or whether the Couse Trust had been split into two separate trusts (as argued by the Clough heirs).

**{¶22}** In *KeyBank*, this court determined the dispositive question posed by the request for a declaratory judgment by concluding that KeyBank split the Couse Trust. In fact, the opinion of the court twice stated that conclusion. It first stated that "KeyBank informed the Clough Heirs that the Couse Trust had been split into two different trusts[:]; the Clough Trust and the Schlitt [T]rust [sic]." *Keybank,* 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 16. We restated that conclusion by finding that "the account statements reflected that the trusts [sic] had been in fact divided" and that "[t]he record reflects that the trusts [sic] were in fact divided into two separate trusts." *Id.* at ¶ 22.

**{¶23}** The panel's statements that the Couse Trust had been divided into two trusts fully resolved the declaratory judgment. Notably, KeyBank did not seek reconsideration of this court's decision under App.R. 26(A)(1) nor did it pursue a further appeal to the Ohio Supreme Court. The panel's conclusions were final and binding on the trial court. *Morton Internatl. v. Continental Ins. Co.*, 104 Ohio App.3d 315, 320, 662 N.E.2d 29 (1st Dist.1995). We therefore must conclude that statements in *Keybank* were the law of the case. With the determination that the Couse Trust had been divided, only the Clough heirs were entitled to share in the funds held in the FBO JSC Trust and the Schlitt heirs were entitled to share only in the funds held in the FBO HHS Trust.

{¶24} The resolution of the declaratory judgment action left only the counterclaims raised by the Clough heirs — that KeyBank breached the trust by refusing to divide it into two trusts or breached its fiduciary duty by making the Clough heirs believe that the Couse Trust had been split into two trusts.

{¶25} With respect to the breach of trust claim, the Clough heirs presented an either/or argument: either KeyBank split the trust, in which case it breached a fiduciary duty by merging the split trust into a single trust upon Schlitt's death, or, if it did not split the trust, it breached its fiduciary duty by only giving the Clough heirs information related to the investment account created for their benefit, despite their being beneficiaries of the entire trust.

{¶26} The Clough heirs' claim for breach of fiduciary duty was likewise framed as an either/or argument: either KeyBank split the trust and then violated its fiduciary duty to the Clough heirs by recombining the divided trusts, or it failed to act impartially in managing and distributing the trust by causing the Clough heirs to believe that the Clough trust had been split and existed for their sole benefit, and in addition failing to keep them advised of events occurring in the Schlitt account (the care and maintenance payments to Schlitt) to their detriment.

{¶27} Having found in the first appeal that the Couse Trust had been split and that the Clough and Schlitt heirs would take their share from the funds held in their respective trusts, we remanded because there were genuine issues of material fact remaining on the counterclaims.

{¶28} On remand, both parties raised questions about the holding in *KeyBank* at the start of trial.  In its opening statement at trial, KeyBank stated that it did not split the Couse Trust. The Clough heirs responded in their opening statement by wondering why KeyBank was arguing that it never split the trusts given that this court stated in *KeyBank* that the Couse Trust had been divided into two separate trusts.  During a break in trial testimony, the Clough heirs again reiterated that the Couse Trust had been split, whether by agreement between Jeanne Clough and Howard Schlitt or by KeyBank.  The court stated that "I read [the *KeyBank* decision] 100 times and I thought it said that it was conducted a little differently.  So we can agree to disagree but clearly that's still on the table."

{¶29} There was no room for the court to disagree with the panel's decision.  Despite the panel having found that "[t]he record reflects that the trusts were in fact divided into two separate trusts[,]" the court conducted a trial and found as matter of fact that "although the money was divided into two sub-accounts for investment purposes and for current lifetime distributions, the Couse Trust itself was never divided into two separate and distinct trusts."  This finding erroneously disregarded what had been established as a matter of law in *KeyBank*.

{¶30} The court's sole function on remand was to address the counterclaims. Although we stated that there were genuine issues of material fact on the counterclaims, a trial was not absolutely necessary. The counterclaims were derivative to the declaratory judgment action because they were viable only if the Couse Trust had not been split into two trusts or, having been split, were recombined into a single trust for distribution to the respective heirs. By necessary implication, our holding that the trust had been split vitiated the counterclaims for breach of trust and breach of fiduciary duty. Damages for a breach of trust are premised on the idea that "the trust should be restored to the position it would have been in had the harm not occurred." General Comment to R.C. 5810.01. Thus, the damages to be paid by a trustee who commits a breach of trust is "[t]he amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred." *See* R.C. 5810.02(A). Damages for a trustee's breach of fiduciary duty are similar: "A trustee who commits a breach of trust is * * * chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered." Restatement of the Law 3d, Trusts, Section 205(b) (1990). *See also Spalding v. Coulson*, 8th Dist. Cuyahoga Nos. 70524 and 70538, 1998 Ohio App. LEXIS 4105, 29-30 (Sept. 3, 1998) ("As in all other tort actions, losses incurred must be proximately caused by the breach[.]").

{¶31} The measure of damages available for breach of trust and breach of fiduciary duty were consistent with the prayer for damages contained in the Clough heirs' counterclaims. The Clough heirs asked the court to "compel Key Bank [sic] to return to the Trust the amounts it improperly and inequitably distributed to Howard Schlitt and the Schlitt Heirs." The procedural posture of the first appeal did not allow us to enter judgment as a matter of law on the counterclaims — it was left to the trial court to resolve those claims "consistent with" the opinion. *Keybank,* 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 24. Nevertheless, resolution of the counterclaims should have been perfunctory given that the damages available to the Clough heirs on their counterclaims were identical to what had been ordered in the declaratory judgment portion of the *Keybank* opinion. A trial was therefore unnecessary.

{¶32} We therefore conclude that the decision in *KeyBank*, that the Couse Trust had been divided into two separate trusts, is the law of the case and is binding on all parties. KeyBank is required to disburse funds held in the FBO JSC Trust to the Clough heirs and disburse funds held in the FBO HHS Trust to the Schlitt heirs.

### III. Attorney Fees

{¶33} In addition to finding that the trust had not been divided, the court found that (1) KeyBank's legal fees were properly charged to the trust; (2) that the Clough heirs should pay KeyBank's attorney fees from their share of the trust corpus; and (3) that both KeyBank and the Clough heirs be jointly and severally liable to pay the Schlitt heirs' legal fees. The Clough heirs contest all three orders.

**{¶34}** The court may, in a case involving the administration of a trust, "award costs, expenses, and reasonable attorney's fees to any party, to be paid by another party, from the trust that is the subject of the controversy, or from a party's interest in the trust that is the subject of the controversy." R.C. 5810.04.

**{¶35}** The court awarded KeyBank its attorney fees "because of the Clough Heirs' unwillingness to accept that the terms of the Couse Trust control its ultimate distribution. The Clough Heirs refused to agree that KeyBank's proposed final distribution was proper." However, the decision in *Keybank* that the Couse Trust had been split into two separate trusts abrogates the rationale underlying the court's order for attorney fees. Therefore, the award of attorney fees must likewise be abrogated. We vacate the award of attorney fees to KeyBank. We likewise vacate the award of attorney fees to the Schlitt heirs, because the court's rationale for awarding those fees — that the Schlitt heirs would not have been forced to incur legal fees but for the Clough heirs litigating their claims against KeyBank — is no longer viable in light of our holding. The parties are to bear their own attorney fees.

**{¶36}** Judgment reversed and remanded to the trial court to enter judgment for the Clough heirs and vacate the award of attorney fees consistent with this opinion.

It is ordered that KeyBank pay the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR
KEYWORDS AND SUMMARY: