[Cite as *Keybank Natl. Assn. v. Thalman*, 2020-Ohio-660.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KEYBANK NATIONAL ASSOCIATION,
TRUSTEE,                                    :

       Plaintiff-Appellee,       :

                                       No. 108123

v.                          :

HEATHER THALMAN, ET AL.,      :

       Defendants-Appellants.   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 27, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2012 ADV 179748

---

### *Appearances:*

Giffen & Kaminski, L.L.C., Kerin Lyn Kaminski, Tina Y.
Rhodes, and Karen L. Giffen, *for appellee*.

Law Office of Mark E. Porter, L.L.C., and Mark E. Porter;
Law Office of Rebecca Yingst Price, L.L.C., and Rebecca
Yingst Price, *for appellants*.

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendants-appellants, Heather Thalman, et al., (collectively the
"Clough Heirs") appeal from the final judgment entered on December 18, 2018, in

the Cuyahoga Court of Common Pleas, Probate Division. The Clough Heirs raise the following assignments of error for review:

1. The trial court erred to the prejudice of the Clough Heirs by failing to order KeyBank to distribute to the Clough Heirs today's fair market value of the assets in the FBO JSC Trust, less the partial distribution received, since the Trust vested in them upon the death of Dr. Schlitt on July 4, 2011, and was liquidated without their consent.

2. The trial court erred to the prejudice of the Clough Heirs by failing to impose prejudgment interest and postjudgment interest under R.C. 1343.03(A) on the assets held in the FBO JSC Trust after the Court of Appeals ruled on May 5, 2016, that the FBO JSC Trust created on December 7, 2008, was for the sole benefit of the Clough Heirs.

3. The trial court erred to the prejudice of the Clough Heirs by failing to hold a hearing on their motion for payment of their costs and attorney fees pursuant to R.C. 5810.04 since they were the prevailing party.

4. The trial court erred to the prejudice of the Clough Heirs by failing to order that KeyBank pay the Clough Heirs compensatory damages in the amount of $1,161,807 as computed by the Clough Heirs' expert witness, William Hyde, in his report of May 28, 2014, as updated December 15, 2016.

5. The trial court erred to the prejudice of the Clough Heirs by failing to hold a hearing on the Clough Heirs' request for punitive damages against KeyBank, effectively denying their claim for punitive damages.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} In 1935, Howard Couse established a trust (the "Couse Trust") that provided income for his two grandchildren, Jeanne Clough and Howard Schlitt. Upon the death of either Clough or Schlitt, their heirs would become trust

beneficiaries.  Upon the death of both Clough and Schlitt, the trust corpus would be divided into two, equal shares: one share payable to Clough's children and heirs Heather Thalman, DeWayne Richey III, Douglas Richey and Margaret Nelson (the "Clough Heirs"); the other share payable to Schlitt's children and heirs Cynthia Desformes, Andrea Weaver, and Lorraine Schlitt (the "Schlitt Heirs.").  The Couse Trust authorized the beneficiaries to receive payment of any sum deemed necessary for their support, ease, and maintenance.

{¶ 4}  By 2006, Clough and Schlitt had developed different ideas on how the trustee, KeyBank National Association ("KeyBank"), should manage the trust investments.  Clough sought a conservative investment approach in order to maximize long-term growth of the trust corpus.  In contrast, Schlitt preferred a more aggressive investment approach in order to maximize monthly income.  In July 2006, Schlitt sent a letter to KeyBank stating that the income from the Couse Trust was "totally inadequate."  Dr. Schlitt also threatened that if the performance of the trust did not improve immediately, he would move the trust to be managed by another trustee.

{¶ 5}  KeyBank was unsure if it had the authority to divide the Couse Trust. At the time, Clough and Schlitt were also the beneficiaries of a second trust — the Margaret Schlitt Trust — which specifically authorized division of the trust corpus. KeyBank told Clough and Schlitt that it could divide the Margaret Schlitt Trust, but because the Couse Trust lacked similar language specifically authorizing division, it

was "working with our Internal Trust counsel to clarify the issues in protecting your respective family's [sic] interests in the Couse Trust if it were divided as well."

{¶ 6} KeyBank apparently took no action with regard to dividing the trust until late 2008, when Jeanne Clough died. Several weeks after her death, KeyBank divided the trust into two investment accounts: one for the benefit of Clough ("FBO JSC"); the other for the benefit of Schlitt ("FBO HHS"). Trust income would be paid to the Clough heirs from the Clough account, while trust income to Howard Schlitt would be paid from the Schlitt account. The beneficiaries were given account statements only from their respectively divided accounts. They were not provided account statements for the entire Couse Trust.

{¶ 7} KeyBank informed the Clough Heirs that they would be entitled to quarterly income distributions from the FBO JSC account until Schlitt's death. KeyBank also told one of the Clough Heirs that following Schlitt's death, "the Couse Trust FBO JSC will terminate, and the remaining proceeds will be distributed equally between you and your siblings." In a March 2009 letter sent after Jeanne Clough's death, KeyBank informed each of the four Clough Heirs that the "Howard A. Couse Trust * * * will continue for the benefit of you and your siblings." KeyBank also informed the four Clough Heirs that "[t]he current market value is $653,605 (including income cash). Your one-fourth share is approximately $163,401."

{¶ 8} In April 2008, Schlitt, through his long-time companion, made a request for additional income because his declining health required intensive medical care. Exercising its discretionary trust authority to provide for the "support,

ease and maintenance" of the beneficiaries, KeyBank paid Schlitt $12,000 per month exclusively from the Schlitt account. KeyBank's internal documentation of the discretionary distributions to Schlitt specifically referenced the FBO HHS account and, under a heading called "Document Dispositive Provisions," stated, "Upon the death of Howard H. Schlitt, the trust will distribute to his then living lineal descendants." The discretionary payments continued until Schlitt died in 2011. None of the Clough Heirs were aware that KeyBank was making additional payments to Schlitt because they were not informed by KeyBank and they were not receiving any statements for the FBO HHS account.

{¶ 9} When Schlitt died, the Clough Heirs notified KeyBank, seeking liquidation of the FBO JSC account. KeyBank replied to one of the Clough Heirs, noting that the FBO JSC trust share had been segregated for the "equal benefit of you and your siblings" and that "[y]ou are correct in that pursuant to the terms of the Couse Trust FBO JSC, Dr. Schlitt's death will result in the termination of the Howard A. Couse Trust FBO JSC in equal shares to you and your siblings."

{¶ 10} In response to demands by the Schlitt Heirs to liquidate the Couse Trust, KeyBank informed them that it could not yet act on liquidation "due to a difference of interpretation of the final dispositive provisions of the Howard A. Couse Trust." KeyBank told the Schlitt Heirs that its trust counsel was reviewing the trust agreement and "[i]t may be that both of the Howard Couse Trusts, your father's and Jeanne Clough's portions, will be combined and then divided, per stirpes, amongst you and your siblings and Jeanne's four children as well." KeyBank told the

Schlitt Heirs that if the two accounts had to be recombined, it would need approval from the Clough Heirs to complete liquidation. The Schlitt Heirs responded by threatening KeyBank with legal action should it fail to put the trust assets into their account. The following day, KeyBank informed the Schlitt Heirs that "our trust counsel has determined that both of the Howard Couse Trusts (the one for the benefit of your father and the other for the benefit of Jeanne Clough) are to be distributed 50% to the three of you and 50% to the four Clough children." KeyBank reaffirmed to the Schlitt Heirs that "you and your sisters will split 50% of your father's trust and also split 50% of the Jeanne Clough Trust." At the time, the FBO JSC account was valued at $934,000; the additional distributions to Howard Schlitt left $460,000 in the FBO HHS account. Thus, the combining of the accounts resulted in $237,000 being taken from the FBO JSC account for distribution to the Schlitt Heirs.

{¶ 11} The Clough Heirs objected to combining the two investment accounts. They maintained that KeyBank had actually split the trust corpus into two separate trusts and that merging them back into a single trust would substantially impair their rights as beneficiaries given the amounts paid to Schlitt. They believed that the Schlitt Heirs should be solely affected by the income paid to Schlitt during his last years.

{¶ 12} KeyBank disagreed that it had split the Couse Trust into two separate trusts, claiming that it had merely split the trust into two investment accounts that it recombined before liquidating the Couse Trust. On June 18, 2012, KeyBank filed

a petition for declaratory judgment, requesting the trial court to "declare the rights of the beneficiaries, the proper discretionary distributions and the proper allocation of expenses, taxes and fees."

{¶ 13} In response, the Clough Heirs filed counterclaims against KeyBank alleging that it committed a statutory breach of trust by failing to keep the current beneficiaries of the trust reasonably informed about the administration of the Couse Trust and breached its fiduciary duty in the manner in which it managed the trust. The Clough Heirs sought compensatory damages, punitive damages, and an award of costs and attorney fees.

{¶ 14} In resolving the parties' cross-motions for summary judgment, the trial court determined that KeyBank had not, and could not, split the Couse Trust into two separate trusts. Accordingly, the trial court granted summary judgment in favor of KeyBank as to all of the Clough Heirs' claims, and ordered the Clough Heirs to pay KeyBank's attorney fees.

## A. *Thalman I*

{¶ 15} This court reversed the summary judgment on appeal. *KeyBank Natl. Assn. v. Thalman*, 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832 ("*Thalman I*"). As an overriding holding, the panel found the evidence showed that "KeyBank informed the Clough Heirs that the Couse Trust had been split into two different trusts; the Clough Trust and the Schlitt Trust." *Id.* at ¶ 16. This conclusion was reached on evidence that the trusts were given different names, different account numbers, and had separate statements mailed to the beneficiaries of the

respective accounts. *Id.* In addition, this court cited evidence that KeyBank individually informed the Clough and Schlitt Heirs that upon Schlitt's death, the respective FBO accounts would be liquidated and divided among the siblings. *Id.* at ¶ 17. The panel found an issue of material fact existed on whether KeyBank managed the trust in good faith. *Id.*

{¶ 16} With respect to the question of whether the trial court erred by finding that KeyBank should combine and equally distribute the trusts, the panel rejected KeyBank's assertion that R.C. 5804.17 required it to combine the two investment accounts. Noting that the statute allowed division of a trust "if the result does not substantially impair the rights of any beneficiary or have a materially adverse effect on the achievement of the purposes of the trust," this court found that KeyBank could split the trust because doing so did not substantially impair the rights of either Jeanne Clough or Howard Schlitt. *Id.* at ¶ 18. This court found that dividing the trust not only accommodated the separate investment goals of Clough and Schlitt, but that the aggressive investment approach desired by Schlitt worked to his benefit to finance his health and living expenses. *Id.* at ¶ 19. This court found that recombining the trusts would have a materially adverse effect on Clough's investment goals and that a question of fact existed "regarding prejudice to the Clough Heirs to distribute the Couse Trust equally amongst the Clough Heirs and Schlitt Heirs." *Id.*

{¶ 17} Lastly, the *Thalman I* panel considered the question of whether the court erred by finding that the Clough Heirs did not make out a claim for breach of

fiduciary duty because they did not sustain any damages. Reiterating that "the trusts had been in fact divided[,]" *id.* at ¶ 22, the panel found that by recombining the trusts, KeyBank took $237,000 from the FBO JSC account and placed it in the FBO HHS account. *Id.* at ¶ 23. Thus, this court concluded that the $237,000 was a "potential injury to the Clough Heirs." *Id.*

{¶ 18} On remand, the matter proceeded to a bench trial in July 2017. At the onset of trial, both parties raised questions about the holding in *Thalman I.* In its opening statement, KeyBank stated that it did not split the Couse Trust. The Clough Heirs responded in their opening statement by wondering why KeyBank was arguing that it never split the trusts given that this court stated in *Thalman I,* that the Couse Trust had been divided into two separate trusts. During a break in trial testimony, the Clough Heirs again reiterated that the Couse Trust had been split, whether by agreement between Jeanne Clough and Howard Schlitt or by KeyBank. When counsel for the Clough Heirs suggested that the issue had been conclusively resolved by *Thalman I*, the trial court disagreed, stating:

> I read [*Thalman I*] 100 times and I thought it said that it was conducted a little differently. So we can agree to disagree but clearly that's still on the table.

(Tr. 313.)

{¶ 19} At the conclusion of the trial, the trial court issued extensive findings of fact and conclusions of law. The court determined that the Couse Trust had been created for the lifetime benefit of Clough and Schlitt, giving them the right to equal income distributions and discretionary distributions for their support, ease, and

maintenance. The court characterized the Couse Trust as a "pot" trust, meaning that "all of the beneficiaries in the same beneficiary class share from one pot. A reduction of the assets of the trust for one beneficiary necessarily results in a reduction for all beneficiaries upon final distribution." The court found no trust language that would allow the trust to be divided. It further found that KeyBank did not split the trust into two separate trusts, but created two investment sub-accounts for the single trust.

{¶ 20} Regarding the pending counterclaims, the trial court concluded that KeyBank did not breach its fiduciary duty to the Clough Heirs by creating two investment sub-accounts. The court found that the trust instrument granted the trustee "unrestricted power to manage all property held by it hereunder as if the absolute owner itself," and that KeyBank did not require beneficiary approval to carry out transactions. It stated that "[a]lthough the money was divided into two sub-accounts for investment purposes and for current lifetime distributions, the Couse Trust itself was never divided into separate and distinct trusts." The court rejected assertions by the Clough Heirs that KeyBank's trust officer sent letters to them indicating that the trust had been split. The court "was persuaded by [the trust officer's] explanation as to what the letters he authored meant and by the fact that [the trust officer] never thought that the Couse Trust had been permanently divided because the Couse Trust did not allow for permanent division."

{¶ 21} With respect to claims that KeyBank breached its fiduciary duty to the Clough Heirs by making distributions to Schlitt, the trial court found KeyBank acted

within the scope of its discretion by distributing additional funds to Schlitt to provide for his "ease." The court found that KeyBank acted reasonably upon information provided to it by Schlitt's long-time companion, whom the Clough Heirs considered as their "aunt." The court also found no reason to believe that KeyBank would have exercised its discretion any differently had it required additional verification of Schlitt's medical expenses.

{¶ 22} The court also rejected assertions by the Clough Heirs that KeyBank breached its fiduciary duty because letters sent by KeyBank to the beneficiaries led them to believe that the Couse Trust had been permanently changed in a way that altered the manner in which the trust corpus would be distributed. Conceding that KeyBank's correspondences were "not a model of clarity," the court found that the correspondences were "not false and did not promise the Clough Heirs that the dispositive portion of the Couse Trust had been changed." It found that the trust officer's communications to the Clough Heirs used language consistent with the position that the trust had not been split, noting for example that the trust officer informed the Clough Heirs that the trust had been divided "into two equal shares" with the creation of the two investment accounts designed to accommodate Schlitt's and the Clough Heirs' investment goals. The court found that "[t]he word 'shares' in and of itself denoted that the Couse Trust remains as one trust with separate parts or shares." The court found that the Clough Heirs "made an assumption regarding what the letters meant."

{¶ 23} In addition, the trial court found that the Clough Heirs failed to prove that they suffered any damage as a result of any of their claims for breach of fiduciary duty. The court found that even if the Clough Heirs justifiably relied on KeyBank's correspondence to arrive at the expectation of a greater share of the trust corpus, they failed to show detrimental reliance on that expectation by making any life decisions or altered investment patterns based on that expectation.

{¶ 24} Finally, the court ordered the Clough Heirs to pay all of KeyBank's attorney fees incurred after the court granted the Schlitt Heirs' first motion for summary judgment. The court did not actually determine the amount of attorney fees, other than to state that KeyBank's fees "shall be paid at the usual and customary hourly rates charged by KeyBank's lawyer to KeyBank and for all the hours approved for payment by KeyBank." The court certified no just reason for delay.

## B. *Thalman II*

{¶ 25} In *Keybank Natl. Assn. v. Thalman*, 8th Dist. Cuyahoga No. 106250, 2018-Ohio-3367 ("*Thalman II*"), this court reversed the judgment of the trial court. In relevant part, this court held that the decision in *Thalman I*, that the trustee had divided the trust into two separate trusts for the separate benefit of the two beneficiaries pursuant to R.C. 5804.17, was the law of the case and was binding on all of the parties. This court explained, in relevant part:

> In [*Thalman I*], this court determined the dispositive question posed by the request for a declaratory judgment by concluding that KeyBank split the Couse Trust. In fact, the opinion of the court twice stated that conclusion. It first stated that "KeyBank informed the Clough Heirs that the Couse Trust had been split into two different trusts[:]; the

Clough Trust and the Schlitt [T]rust [sic]." [*Thalman I*], 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 16. We restated that conclusion by finding that "the account statements reflected that the trusts [sic] had been in fact divided" and that "[t]he record reflects that the trusts [sic] were in fact divided into two separate trusts." *Id.* at ¶ 22.

The panel's statements that the Couse Trust had been divided into two trusts fully resolved the declaratory judgment. Notably, KeyBank did not seek reconsideration of this court's decision under App.R. 26(A)(1) nor did it pursue a further appeal to the Ohio Supreme Court. The panel's conclusions were final and binding on the trial court. *Morton Internatl. v. Continental Ins. Co.*, 104 Ohio App.3d 315, 320, 662 N.E.2d 29 (1st Dist.1995). We therefore must conclude that statements in [*Thalman I*] were the law of the case. With the determination that the Couse Trust had been divided, only the Clough Heirs were entitled to share in the funds held in the FBO JSC Trust and the Schlitt Heirs were entitled to share only in the funds held in the FBO HHS Trust.

* * *

There was no room for the court to disagree with the panel's decision. Despite the panel having found that "[t]he record reflects that the trusts were in fact divided into two separate trusts[,]" the court conducted a trial and found as matter of fact that "although the money was divided into two sub-accounts for investment purposes and for current lifetime distributions, the Couse Trust itself was never divided into two separate and distinct trusts." This finding erroneously disregarded what had been established as a matter of law in [*Thalman I*].

*Thalman II* at ¶ 22-23; 29.

{¶ 26} Regarding the Clough Heirs' remaining counterclaims, this court determined that because the trust had been split as the Clough Heirs asserted, their counterclaims were necessarily "vitiated" and/or "perfunctory" given the nature of the requested damages. Specifically, *Thalman II* stated as follows:

The court's sole function on remand was to address the counterclaims. Although we stated that there were genuine issues of material fact on the counterclaims, a trial was not absolutely necessary. The

counterclaims were derivative to the declaratory judgment action because they were viable only if the Couse Trust had not been split into two trusts or, having been split, were recombined into a single trust for distribution to the respective heirs. By necessary implication, our holding that the trust had been split vitiated the counterclaims for breach of trust and breach of fiduciary duty. Damages for a breach of trust are premised on the idea that "the trust should be restored to the position it would have been in had the harm not occurred." General Comment to R.C. 5810.01. Thus, the damages to be paid by a trustee who commits a breach of trust is "[t]he amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred." *See* R.C. 5810.02(A). Damages for a trustee's breach of fiduciary duty are similar: "A trustee who commits a breach of trust is * * * chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered." Restatement of the Law 3d, Trusts, Section 205(b) (1990). *See also Spalding v. Coulson*, 8th Dist. Cuyahoga Nos. 70524 and 70538, 1998 Ohio App. LEXIS 4105, 29-30 (Sept. 3, 1998) ("As in all other tort actions, losses incurred must be proximately caused by the breach[.]").

The measure of damages available for breach of trust and breach of fiduciary duty were consistent with the prayer for damages contained in the Clough Heirs' counterclaims. The Clough Heirs asked the court to "compel Key Bank [sic] to return to the Trust the amounts it improperly and inequitably distributed to Howard Schlitt and the Schlitt Heirs." The procedural posture of the first appeal did not allow us to enter judgment as a matter of law on the counterclaims — it was left to the trial court to resolve those claims "consistent with" the opinion. *Thalman I*, 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 24. Nevertheless, resolution of the counterclaims should have been perfunctory given that the damages available to the Clough Heirs on their counterclaims were identical to what had been ordered in the declaratory judgment portion of the Keybank opinion. A trial was therefore unnecessary.

We therefore conclude that the decision in [*Thalman I],* that the Couse Trust had been divided into two separate trusts, is the law of the case and is binding on all parties. KeyBank is required to disburse funds held in the FBO JSC Trust to the Clough Heirs and disburse funds held in the FBO HHS Trust to the Schlitt Heirs.

*Id.* at ¶ 30-32.

**{¶ 27}** Finally, this court reversed the award of attorney fees in favor of KeyBank, stating:

> The court awarded KeyBank its attorney fees "because of the Clough Heirs' unwillingness to accept that the terms of the Couse Trust control its ultimate distribution. The Clough Heirs refused to agree that KeyBank's proposed final distribution was proper." However, the decision in Keybank that the Couse Trust had been split into two separate trusts abrogates the rationale underlying the court's order for attorney fees. Therefore, the award of attorney fees must likewise be abrogated. We vacate the award of attorney fees to KeyBank. We likewise vacate the award of attorney fees to the Schlitt Heirs, because the court's rationale for awarding those fees — that the Schlitt Heirs would not have been forced to incur legal fees but for the Clough Heirs litigating their claims against KeyBank — is no longer viable in light of our holding. *The parties are to bear their own attorney fees.*

(Emphasis added.) *Id.* at ¶ 35.

**{¶ 28}** On remand, the Clough Heirs filed a "motion for judgment pursuant to the Court of Appeals remand and for a hearing on punitive damages, costs and attorney fees." In the motion, the Clough Heirs argued, pursuant to their interpretation of this court's decision in *Thalman II*, that the trial court was required to reassess the merits of their counterclaims and accept this court's finding that (1) the Clough Heirs sustained damages as a result of KeyBank's actions as Trustee, and (2) the measure of damages for breach of trust and breach of fiduciary duty were "consistent with the prayer for damages contained in the Clough Heirs' counterclaims." *Thalman II* at ¶ 31. Thus, the Clough Heirs asserted that they were entitled to (1) judgment in the amount of $605,656.85 for the outstanding balance of the FBO JSC account, (2) prejudgment and postjudgment interest at the statutory

rate of 4 percent per annum, (3) compensatory damages in the amount of $1,161,807 through November 30, 2016, (4) punitive damages pursuant to R.C. 2315.21, (5) reimbursement of all trustee fees since January 1, 2009, and (6) reasonable attorney fees, expenses and costs pursuant to R.C. 5819.04.

{¶ 29} KeyBank filed a brief in opposition, arguing, in relevant part:

The Motion is not in accord with [*Thalman II*] and it is impossible to understand what argument is being made by the Clough Heirs to stretch [*Thalman II*] into a ruling that would permit them to seek damages, return of fees, punitive damages and attorney fees.

* * *

In the end, the Court of Appeals decided in [*Thalman II*] that the Couse Trust had been split and that the split should be maintained for distribution. The Clough Heirs had filed counterclaims alleging that if the Couse Trust was not split for the purposes of distribution, that KeyBank had breached its fiduciary duties. [*Thalman II*] states that "By necessary implication, our holding that the trust had been split vitiated the counterclaims for breach of trust and breach of fiduciary duty." There is nothing equivocal in that holding. The counterclaims have been vitiated.

* * *

As to attorney fees, [*Thalman II*] is likewise clear, it holds that "We vacate the award of attorney fees to KeyBank" and "The parties are to bear their own attorney fees." Again, this seems final and not an issue which requires further action or a hearing by the trial court.

{¶ 30} On December 18, 2018, the trial court issued a judgment entry ordering KeyBank to disburse the funds held in the FBO JSC trust to the Clough Heirs and to disburse the funds held in the FBO HHS Trust to the Schlitt Heirs. In addition, the trial court vacated the award of attorney fees to KeyBank and the Schlitt Heirs, stating "that the parties are to bear their own attorney fees."

{¶ 31} On December 18, 2018, the trial court issued a separate judgment entry denying the Clough Heirs' "motion for judgment pursuant to the Court of Appeals remand and for a hearing on punitive damages, costs and attorney fees." The trial court found, in relevant part:

> The Court finds that [*Thalman II*] determines that "resolution of the counterclaims should have been perfunctory given that the damages available to the Clough Heirs on their counterclaims were identical to what had been ordered in the declaratory judgment portion of [*Thalman I*]." The amount of potential damages ordered in [*Thalman I*] at paragraph 23 is "237,000.00 to the Clough Heirs." The Court finds that [*Thalman II*] specifically instructs this Court as to the damages to the Clough Heirs and payment of attorney fees. The Court further finds that the opinion does not provide for a further hearing on damages.

{¶ 32} The Clough Heirs now appeal from the trial court's judgment.

## II. Law and Analysis

{¶ 33} In their first assignment of error, the Clough Heirs argue the trial court erred by failing to order KeyBank to pay the present fair market value of the assets that were in the FBO JSC when it vested on July 4, 2011. In their second assignment of error, the Clough Heirs argue the trial court erred by failing to award prejudgment interest and postjudgment interest pursuant to R.C. 1343.03(A). In their third assignment of error, the Clough Heirs argue the trial court erred by failing to award them attorney fees and costs pursuant to R.C. 5810.04. In their fourth assignment of error, the Clough Heirs argue the trial court erred by failing to order KeyBank to pay $1,161,087.00 in compensatory damages "for the losses that they sustained that were caused by KeyBank's breach of trust and breach of fiduciary duty." In their fifth assignment of error, the Clough Heirs argue the trial court erred

by failing to conduct a hearing on their request for punitive damages. We address these assigned errors together.

{¶ 34} As referenced in *Thalman II*,

> "The law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Huntington Natl. Bank v. Dixon*, 8th Dist. Cuyahoga No. 101273, 2015-Ohio-1735, ¶ 9 (citations and internal quotations omitted). The law-of-the-case doctrine is a rule of practice that ensures consistency of results in a case, avoids endless litigation of settled issues, and preserves the structure of superior and inferior courts as designed by the Ohio Constitution. *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15; *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

*Thalman II*, 8th Dist. Cuyahoga No. 106250, 2018-Ohio-3367, at ¶ 20.

{¶ 35} Similarly, this court has explained the implications of the appellate court mandate rule as follows:

> An appellate mandate works in two ways: it vests the lower court on remand with jurisdiction and it gives the lower court on remand the authority to render judgment consistent with the appellate court's judgment. Under the "mandate rule," a lower court must "carry the mandate of the upper court into execution and not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Natl. Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); see also *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009-Ohio-4986, at ¶ 32, 915 N.E.2d 633 ("We have expressly held that the Ohio Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals."). The lower court may, however, rule on issues left open by the mandate. *Id.* But when the mandate leaves nothing left to decide, the lower court is bound to execute it. *Id.* We have stated that the mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *State v. Larkins*, 8th Dist. No. 85877, 2006-Ohio-90, at ¶ 31.

*State v. Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 16.

{¶ 36} After careful consideration, we find the trial court's judgment rendered on December 18, 2018, complied fully with the express directives of our mandate in *Thalman II*. Contrary to their position on appeal, this court did not instruct the trial court to enter judgment in favor of the Clough Heirs on their counterclaims. In fact, the *Thalman II* panel characterized the counterclaims as perfunctory. Thus, having laid the merits of the counterclaims at rest, *Thalman II* instructed the court to (1) find the Couse Trust was divided into two trusts pursuant to the law-of-the-case doctrine, (2) order KeyBank to disburse funds held in the FBO JSC Trust to the Clough Heirs, (3) vacate the award of attorney fees to KeyBank and the Schlitt Heirs, and (4) order that the parties bear their own attorney fees. This court's mandate left nothing else to decide. On remand, the trial court then executed the mandate of this court in full compliance with the language set forth in *Thalman II*.

{¶ 37} For these same reasons, we find the trial court did not err in denying the Clough Heirs' "motion for judgment pursuant to the Court of Appeals remand and for a hearing on punitive damages, costs and attorney fees." Preliminarily, we note that arguments concerning the scope of damages requested in this appeal were previously requested by the Clough Heirs in *Thalman II*. For instance, appellants asked this court to:

1. Enter judgment in favor of the Clough Heirs for KeyBank's liability for breach of fiduciary duty and trust;

2. Order KeyBank to pay the Clough Heirs the sum of $609,608.85 (the value of the FBOJSC trust on July 4, 2011) from the Couse Trust, with an additional amount to be paid by KeyBank equal to interest at the statutory rate of 4 percent per annum from July 28, 2011 until paid (prejudgment interest);

3. Order KeyBank to pay the Clough Heirs for their lost investment income in the amount of $552,198.15, plus interest at the statutory rate of 4 percent per annum from the date of judgment until paid;

* * *

5. Remand the case for hearing on the Clough Heirs entitlement to an award of punitive damages, costs and their attorney fees.

These issues were therefore presented and carefully considered by this court in *Thalman II*. Ultimately, however, this court denied the requested relief by emphatically stating that the applicable damages in this case are limited to "what had been ordered in the declaratory judgment portion of [*Thalman I*]," i.e. — distribution of the FBO JSC Trust to the Clough Heirs, including the $237,000 that was taken from the FBO JSC Trust and distributed to the Schlitt Heirs. *Thalman II*, 8th Dist. Cuyahoga No. 106250, 2018-Ohio-3367, at ¶ 31, citing *Thalman I*, 8th Dist. Cuyahoga No. 102624, 2016-Ohio-2832, at ¶ 23. This court explained that "our holding that the trust had been split vitiated the counterclaims for breach of trust and breach of fiduciary duty." *Id*. at ¶ 30. This is because the *Thalman II* panel determined that the distribution of trust funds ordered in the declaratory judgment were "identical" to the "damages available to the Clough Heirs on their counterclaims," thereby rendering the counterclaims "perfunctory," or moot. *Id*. at ¶ 31. The panel further held that the parties are to bear the cost of their own attorney

fees.  *Id.* at ¶ 35.  The forgoing resolution of posed legal questions constituted the law of the case.

**{¶ 38}** We recognize that the Clough Heirs disagree with portions of this court's decision in *Thalman II*.  However, no appeal was taken from *Thalman II*, and this court will not reconsider its prior decision outside the time period prescribed by App.R. 26.  As such, the trial court did not err in denying the Clough Heirs' request to seek attorney fees and additional damages.

**{¶ 39}** The Clough Heirs' first, second, third, fourth, and fifth assignments of error are overruled.

**{¶ 40}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and

LARRY A. JONES, SR., J., CONCUR