[Cite as *Amin, Turocy & Watson, L.L.P. v. Just Funky, L.L.C.*, 2024-Ohio-1368.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

AMIN, TUROCY & WATSON LLP,           :

    Plaintiff-Appellee,           :

                               No. 113076

    v.                           :

JUST FUNKY LLC,                     :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 11, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-963655

---

### *Appearances:*

Watson LLP, and Amanda Rasbach Yurechko, *for appellee*.

Law Office of Matthew S. Romano, LLC, and Matthew S. Romano, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Just Funky, LLC ("Just Funky" or "the company"), appeals from the trial court's July 14, 2023 judgment granting summary

judgment in favor of plaintiff-appellee, Amin, Turocy & Watson, LLP ("the law firm"). After a thorough review of the facts and pertinent law, we affirm.

**Procedural History**

{¶ 2} The law firm filed this action in May 2022. The gravamen of its complaint was that it provided legal services to Just Funky, the balance of the charges for those services, in the amount of $41,658.23, remained unpaid, and Just Funky failed and refused to pay the balance, despite demands from the law firm. The law firm attached an account statement to its complaint that showed an unpaid balance of $41,658.23.

{¶ 3} Just Funky filed an answer to the law firm's complaint, wherein it denied the substantive allegations. It also asserted several affirmative defenses, including that the law firm's claims were barred (1) "by the terms of the agreement or contract between the parties"; (2) by the firm's "failure to perform conditions precedent under the terms of the agreement or contract between the parties"; (3) "in whole or in part because Plaintiff has not suffered any actual damages"; (4) because the law firm "miscalculated any damages that could conceivably be owed"; and (5) "by failure or want of consideration."

{¶ 4} The trial court set a dispositive motion deadline of March 31, 2023. The trial court also set March 31 as the date for the law firm to file its expert report, and April 30 for Just Funky to file a rebuttal expert report. A jury trial was set for July 10, 2023.

{¶ 5} On March 31, 2023, the law firm filed its motion for summary judgment. On April 25, 2023, Just Funky filed a motion for extension of time, in which it requested it be allowed until May 29, 2023, to file its opposition to the law firm's motion for summary judgment, and an extension of time until May 30, 2023, to file its expert report. On May 12, 2023, the trial court granted Just Funky's motion "in part," allowing it until May 22, 2023, to file its opposition to the summary judgment motion. The trial court did not address Just Funky's request for an extension of time to file its expert report (at that time of the court's order, the deadline for filing it had expired).

{¶ 6} On May 22, 2023, Just Funky filed a second motion for extension of time and a request to move the trial date. The trial court granted Just Funky's motion and set the following new dates: (1) Just Funky's brief in opposition to the summary judgment motion was due by June 30, 2023; (2) Just Funky's expert report was due by September 1, 2023; and (3) trial was set for October 23, 2023.

{¶ 7} Just Funky filed its brief in opposition to the law firm's motion for summary judgment on June 30, 2023. On July 14, 2023, the law firm filed a reply brief in support of its summary judgment motion. And on that same date, July 14, the trial court granted the law firm's motion for summary judgment and awarded the firm $41,958.23, plus interest at the statutory rate.[1]

---

[1] We note a slight discrepancy in the request for damages as set forth in the law firm's complaint and as evidenced by its attached account statement, which reflects the amount due and owed as $41,658.23, and the amount awarded by the trial court, which was $41,958.23. This discrepancy will be addressed within.

**{¶ 8}** Just Funky appeals, and in its sole assignment of error contends that the trial court erred by granting summary judgment in favor of the law firm.

**Pertinent Law**

**{¶ 9}** A party is entitled to summary judgment pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

**{¶ 10}** A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.*, Civ.R. 56(E). This court's review of a trial court's ruling on a summary judgment motion is de novo, which means that we review the judgment independently and without deference to the trial court's determination. *Burgess v. Tackas*, 125 Ohio App.3d 294, 296, 708 N.E.2d 285 (8th Dist.1998).

{¶ 11} In the absence of an express contract, an attorney can recover the reasonable value of services rendered on the theory of quantum meruit. *Shearer v. Creekview Broadview Hts. Homeowners' Assn.*, 8th Dist. Cuyahoga No. 94549, 2010-Ohio-5786, ¶ 14, citing *Baer v. Woodruff*, 111 Ohio App.3d 617, 676 N.E.2d 1195 (10th Dist.1996).

{¶ 12} "[A]ttorney fees are not justified merely because the lawyer has charged his [or her] professional time and expenses at reasonable rates; a legitimate purpose must also explain why the lawyer spent that time and incurred those costs." *Disciplinary Counsel v. Johnson*, 113 Ohio St.3d 344, 2007-Ohio-2074, 865 N.E.2d 873, ¶ 71. "'[I]n an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney.'" *Koblentz & Koblentz v. Ferrante*, 8th Dist. Cuyahoga No. 86969, 2006-Ohio-1740, ¶ 24, quoting *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 653 N.E.2d 1245 (10th Dist.1995), citing *Jacobs v. Holston*, 70 Ohio App.2d 55, 434 N.E.2d 738 (6th Dist.1980).

**The Law Firm's Motion**

{¶ 13} In its support of its motion, the law firm submitted the affidavit of an employee who averred that his testimony was based on his "personal knowledge and personal knowledge gained through a review of the business records" of the law firm. According to the affidavit, in 2017, the firm began providing patent and trademark legal services to Just Funky, and prior to it actually starting any work, it provided

the company with its "application filing and prosecution fees and flat fee schedule" ("fee cards"), which were submitted as exhibits to its motion. According to the invoices, which were also submitted in support of its summary judgment motion, the law firm began its work for Just Funky in June 2017, and the total value of its services was $127,321.23. Just Funky paid the firm $85,363, leaving a balance of $41,958.23.

{¶ 14} In 2020, a dispute about the charges arose between the parties. As a result, the law firm reviewed its invoices from the beginning of its relationship with Just Funky against the fee cards to determine whether any discrepancies existed. The affiant averred that, "[g]iving its client every benefit of the doubt," the law firm found that "an argument could possibly be made that it overcharged" Just Funky in the amount of $5,280 since the beginning of the parties' relationship. The law firm also found that it undercharged Just Funky in the amount of $20,162, however. Thus, according to the law firm, there was a net undercharge of $14,882. Despite the discrepancy, the law firm did not rebill the invoices in an attempt to recoup the undercharged fees.

{¶ 15} The law firm also submitted an expert report in support of its motion for summary judgment. The expert had 30 years of experience as an attorney in the area of intellectual property law and opined regarding the law firm's fees in this case. According to the expert, the work performed by the law firm was performed at a "visibly high level of quality." He also found that the rates charged were compatible

with his own experience and in alignment with nationwide costs and fees for intellectual property legal services.

**Just Funky's Brief in Opposition**

{¶ 16} In opposition to the law firm's summary judgment motion, Just Funky "dispute[d] the entirety of Plaintiff's supporting affidavit" and submitted an affidavit of a member and officer of the company who averred that he was its "primary decision maker."

{¶ 17} According to the affiant, (1) the firm did not properly bill for its services provided to Just Funky; (2) the firm did not provide any fee cards until Just Funky requested them in 2019, and when they were provided the metadata showed that they had been backdated; and (3) after conducting its own analysis, Just Funky determined that the backdated fee cards were erroneous and some charges were duplicative. Just Funky also contended that the law firm billed it for third-party expenses it never approved. The company submitted an "overcharge analysis" document, which the affiant averred was created by the company after it "performed several computations and analyses to determine the amount by which Plaintiff overcharged Defendant."

**The Trial Court's Judgment**

{¶ 18} The trial court's judgment set forth the appropriate standard for reviewing a motion for summary judgment. In applying that standard, the court found that the affidavit submitted by Just Funky was "self-serving" and that the law firm "established all elements required to support its claim."

**This Court's Analysis**

{¶ 19} Initially, we consider two contentions raised by Just Funky: (1) that the trial court's ruling was premature given that Just Funky still had time to submit its expert report, and (2) that it was "wait[ing] to assert any counterclaim in this lawsuit in hope that [it] could avoid increased fees * * * as well as * * * preserve [its] friendship" with the law firm's affiant.

{¶ 20} Regarding the contention that the trial court's ruling was premature because Just Funky still had time to file an expert report, by Just Funky's own admission in its opposition to the firm's motion for summary judgment, an expert rebutting the law firm's expert "should not be necessary for defeating" the law firm's motion for summary judgment "at this stage of the lawsuit." Just Funky filed its brief in opposition and did not contend that it needed its expert to properly respond to the law firm's motion. It actually argued just the opposite. It cannot now claim that the trial court erred by prematurely ruling on the law firm's motion. *Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514, ¶ 139 ("'Under the invited error doctrine, a party may not take advantage of an alleged error that the party induced or invited the trial court to make.'"), quoting *Yuse v. Yuse*, 8th Dist. Cuyahoga No. 89213, 2007-Ohio-6198, ¶ 14, citing *State v. Woodruff*, 10 Ohio App.3d 326, 327, 462 N.E.2d 457 (2d Dist.1983).

{¶ 21} We are also not persuaded by Just Funky's insinuation that summary judgment was improper because it was "waiting" to file a counterclaim. The company filed its answer in late July 2022; that would have been the time to

counterclaim against the law firm. There was no after-acquired evidence or later-occurring circumstance that would have justified the company delaying filing a counterclaim.

{¶ 22} Those preliminary considerations aside, we consider the substance of the trial court's judgment. Just Funky contends that if the trial court found the affidavit of its affiant self-serving, it should have found the affidavit of the law firm's affiant self-serving too, which would have created a genuine issue of material fact to be litigated. We disagree.

{¶ 23} Included in the law firm's submissions in support of their motion for summary judgment were the monthly invoices it remitted to Just Funky reflecting the time and disbursements expended on its behalf. Each invoice described the work performed and the disbursements made on behalf of Just Funky, including the detailed billing entry for each charge, and the date on which the work was performed. The invoices also contained the date each invoice was mailed to Just Funky.

{¶ 24} The law firm also submitted an invoice journal that listed all invoices generated since the parties' relationship began in 2017 and the balance on each invoice. Additionally, a payment allocation journal was submitted. That journal showed that Just Funky initially made payments on the invoices it received and showed the total of all the payments against the invoices in the invoice journal.

{¶ 25} Given the above, the law firm met its burden to demonstrate that no genuine issue of fact existed to warrant trial and that it was entitled to judgment as

a matter of law. The burden therefore shifted to Just Funky to demonstrate that a genuine issue of fact existed from which the court could determine a genuine issue remained to be litigated.

{¶ 26} It is well-established that "the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions" and that "a 'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.'" *Eichenberger v. Tucker*, 10th Dist. Franklin No. 12AP-515, 2013-Ohio-805, ¶ 9, quoting *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 10, citing *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, 916 N.E.2d 862, ¶ 30, (8th Dist.); *see also White v. Sears, Roebuck & Co.*, 10th Dist. Franklin No. 10AP-294, 2011-Ohio-204, ¶ 7 (a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence); *Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, 2005-Ohio-6593, 843 N.E.2d 1238, ¶ 24 (7th Dist.) (generally, self-serving affidavits cannot be used by the nonmoving party to survive summary judgment).

{¶ 27} Just Funky "dispute[d] the entirety of Plaintiff's supporting affidavit." However, upon review, its materials submitted in opposition to the law firm's motion lack the specificity needed to defeat the summary judgment motion.

{¶ 28} For example, Just Funky's affiant averred that the company was not provided the fee cards until sometime in 2019, and the metadata showed the fee cards had been backdated. However, the company did not provide the email it claims first provided the fee cards in 2019, or the metadata it claims shows the cards were backdated. Moreover, and perhaps most importantly, the company's affiant neither denied receipt of the detailed monthly invoices provided by the law firm, nor that it allowed the firm to continue to provide legal services on its behalf after receipt of the invoices.

{¶ 29} Likewise, the analysis chart that Just Funky submitted in opposition to the law firm's summary judgment motion did not shed light on the company's claim. One page of the exhibit contains sums in various columns without explanation. Two other pages contain a column for invoice numbers beginning in 2017, listing each as either "Okay," "Overcharged" or "Undercharged," but does not explain how the designations came about. And two other pages are completely illegible.

{¶ 30} On this record, the trial court properly determined that the affidavit Just Funky submitted in opposition to the law firm's summary judgment motion was insufficient to establish a genuine issue of material fact. Moreover, our de novo review of the record shows that the law firm's motion for summary judgment demonstrated that there is no genuine issue of material fact to be litigated.

{¶ 31} In reaching this conclusion, we have considered *Jochum v. Listati*, 8th Dist. Cuyahoga No. 106957, 2019-Ohio-166, as urged by the law firm. In

*Jochum*, the plaintiff sued a law firm for legal malpractice and the law firm countersued for breach of contract and associated claims, claiming that the plaintiff owed the firm money for services rendered. The law firm filed a motion for summary judgment on the plaintiff's legal malpractice claim and its counterclaim for unpaid legal fees and expenses. The plaintiff opposed the summary judgment solely as it related to the law firm's counterclaim and submitted her own affidavit.

{¶ 32} The trial court granted summary judgment in favor of the law firm on both the plaintiff's malpractice claim and the firm's counterclaim for unpaid legal fees and expenses. The trial court found that the plaintiff's "self-serving affidavit uncorroborated by other evidence" could not defeat the law firm's "well-supported motion for summary judgment." *Id.* at ¶ 7. The plaintiff appealed.

{¶ 33} This court affirmed the trial court's judgment. The panel noted that the law firm presented "evidence of specific facts in the record demonstrating its entitlement to summary judgment on its counterclaim for unpaid legal fees and expenses." *Id.* at ¶ 17. In contrast, the plaintiff failed to point "to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial, as required to defeat summary judgment." *Id.* The *Jochum* panel noted that much of the plaintiff's affidavit related to her complaints about the manner in which the law firm handled her case — that is, her legal malpractice claim. And although the plaintiff made some averments about being billed for work she did not need or want, or that the law firm did not do, this court noted that she neither identified

those "specific services" nor otherwise challenged the reasonableness of the time billed or fees charged for any specific task. *Id*. at ¶ 21.

{¶ 34} Just Funky contends that the law firm's reliance on *Jochum* is misguided because (1) in *Jochum*, there was a written agreement between the parties, but no written agreement here; (2) the affidavit Just Funky submitted, along with the "supporting schedules [show] the invoices/bills that were charged at the incorrect rate or were duplicitous"; and (3) the legal services provided in *Jochum* were easily identifiable because a case was pending, whereas, here, the services "were high-volume intellectual property services that had to be performed by a number of different legal staff from whom Plaintiff has not provided any corroborating evidence or first-hand accounts." We are not persuaded by Just Funky's contentions.

{¶ 35} We have already discussed how and why the affidavit submitted by Just Funky was deficient; thus, its second contention that *Jochum* is distinguishable is without merit. The company's first point of alleged distinction — the lack of a written agreement here is also not distinguishable from *Jochum*. The record here demonstrates that prior to commencing its work for Just Funky in 2017, the law firm provided the company with its "application filing and prosecution fees and flat fee schedule," that is, its fee cards. The parties established a relationship, the law firm did work for the company and, in fact, Just Funky paid some of the invoices the law firm presented. Regarding the final alleged distinction between this case and *Jochum*, although the invoices here did not relate to litigation that had been

pending, the law firm's documentation nonetheless specifically identified what its services related to. And that those services may have been performed by various people was not fatal to the law firm's fees. In fact, the agreement in *Jochum* acknowledged the same: "Our statements for services rendered to you will include the product of the hours worked multiplied by the hourly rates for the attorneys, legal assistants, and law clerks that did the work." *Id*. at ¶ 2.

{¶ 36} In light of the above, *Jochum* is not distinguishable from this case; rather, it is instructive and persuasive.

{¶ 37} Finally, as mentioned, there is a discrepancy in the amount requested as a prayer for relief in the law firm's complaint and the amount awarded by the trial court. Civ.R. 54(C), governing judgment and costs, provides in relevant part that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." The record here shows that the law firm is entitled to $41,958.23, as awarded by the trial court. (*See* plaintiff's exhibit No. 5, showing a total value of work performed at $127,321.23 and plaintiff's exhibit No. 6, showing payment by Just Funky in the amount of $85,363; thus, leaving a balance of $41,958.23).

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR