[Cite as *Paul v. Kingsbury*, 2025-Ohio-2865.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ROBERT L. PAUL,                                   :

    Plaintiff-Appellant,            :

                       No. 114552

    v.                                          :

DOROTHEA J. KINGSBURY,                :

    Defendant-Appellee.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 14, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Probate Division
Case No. 2018ADV237555

---

### *Appearances:*

Schneider Smeltz Spieth Bell, LLP, Mark M. Mikhaiel, and
Ashton E. M. Bizzarri, *for appellant*.

Dorothea J. Kingsbury, *pro se*.

---

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant Robert L. Paul ("Paul") appeals the trial court's decision offsetting his damages and not awarding prejudgment interest and the entirety of attorney fees against defendant-appellee Dorothea Kingsbury ("Kingsbury"). We affirm the trial court's decision.

## I.     Facts and Procedural History

**{¶2}** On September 20, 2021, Kingsbury pleaded guilty to an amended indictment consisting of one count of attempted theft, with forfeiture specifications; one count of theft, with forfeiture specifications; and one count of additional money laundering prohibitions.  On March 17, 2023, Kingsbury was sentenced to four years' imprisonment.  Restitution to the victims, in the amount of $750,000 was ordered, with $215,264.95 of that amount owed to Paul.  Journal Entry No. 141865472 (Mar. 17, 2023).  On May 1, 2024, the trial court issued a nunc pro tunc entry to amend the restitution order, stating in part:

> The court finds that the participating victims who exercised their right to recover restitution owed to them from the Lawyers' Fund for client protection have received full restitution, except for Janis Paul and Robert Paul.  Any additional victims in this case who did not elect to participate in the case proceedings and remain unreimbursed are welcomed and encouraged to follow the same process with the Lawyers' Fund for client protection.
>
> With specific regard to victims Janis Paul and Robert Paul, whose restitution amounts exceeded the maximum recovery from the fund, the court finds that they are entitled to the restitution funds received and held by the Cuyahoga County Probation Department.
>
> Therefore, the Cuyahoga County Probation Department is ordered to disperse the funds held under case CR-636132 in the form of two separate checks made out to the following victims in the following amounts: $57,435.51 to the Janis L. Paul Special Needs Trust, C/O Trustee Patricia R. Frutig and $74,297.32 to the Robert L. Paul Special Needs Trust, C/O Trustee Patricia R. Frutig, with completed checks to be provided to Cuyahoga County APA JD May for hand-delivery.

Journal Entry No. 181279366 (May 1, 2024).

**{¶3}** In addition to the criminal case filed against Kingsbury, Paul filed a complaint on September 14, 2018, in the Cuyahoga County Probate Court, for breaches of fiduciary duty. The matter came for trial on August 19, 2024. Paul's complaint alleged breach of trust, ineffective trust administration, and breach of fiduciary duty. The probate court, in its judgment entry, stated that

> the parties stipulated that gross amount of money wrongfully removed from Plaintiff's Trust by Defendant is $283,611.63. The parties also stipulated that Defendant has made two restitution payments in the amount of $2000.00 and $74,297.32. The parties further stipulated that Plaintiff received a payment of $100,000.00 from the Lawyers' Fund for Client Protection.

Judgment Entry Case No. 2018ADV237555 (Sept. 4, 2024).

**{¶4}** The probate court also noted that the Robert L. Paul Special Needs Trust was not created by the probate court and was not under the probate court's supervision. The court also summarized the trial proceedings and its decision in its judgment entry stating verbatim:

> The Court finds that Plaintiff called the current Trustee of the Robert L. Paul Special Needs Trust, Patricia Frutig, as his first witness. Frutig testified that she was appointed by the Defendant to be the Successor Trustee of the Robert L. Paul Special Needs Trust in December 2018. This action was filed prior to Frutig's appointment and Defendant was indicted for stealing trust funds shortly thereafter. Frutig testified that when Defendant resigned as Trustee in favor of Frutig she turned over control of the Trust's UBS account to Frutig. Frutig testified that she did not know about the existence of a Trust PNC account prior to this litigation.
>
> Plaintiff next called Jerold Canon who performed a forensic accounting for the Cuyahoga County Prosecutor's Office for all accounts affected by Defendant's misconduct. Canon testified that Plaintiffs Exhibit 33 reflects his review of the Trust's PNC account from December 30, 2013, through June 25, 2018, with questionable

transactions marked.  Canon testified that he created a spreadsheet to summarize the questionable transactions (Plaintiff's Exhibit 30).

On cross examination Canon was questioned about deposits into the PNC account in December 2014 and August 2016.  (Defendant's Exhibits B and C).  Canon testified that he did not credit the deposits when calculating the total amount wrongfully withdrawn or transferred.

Following Canon's testimony, portions of the Defendant's deposition were read into the record.

Plaintiff's final witness was his expert, Lewis M. Baum.  Baum testified that he reviewed documents provided to him by Plaintiff's counsel including the Trust agreement, Defendant's criminal docket, the calculations and analysis performed by Canon, and bank statements.

Baum testified about his calculation of damages as set forth in his report, Plaintiff's Exhibit 51.  Baum assessed interest for each deduction from the Trust account starting the first day of the month following the deduction and the interest was compounded annually through July 31, 2024.  Baum testified that he received the interest calculations from Plaintiff's counsel and then reviewed the calculations and made some corrections.  There was no testimony about the interest rate charged for each transaction and no additional evidence to establish that the rates were the Ohio Statutory rates.

Baum testified that the compounded interest was the correct calculation to "make the trust whole[.]"  He indicated that based upon the relatively low amount of expenses that needed to be paid from the Trust, too much money was kept in the PNC checking account as opposed to an investment account.  There was no testimony as to when the PNC account was opened and with what funds.  Although Trustee Frutig made mention of a USB account there was no evidence presented about that account and whether or when money was moved to PNC.  Baum was asked on cross examination whether he reviewed all of the PNC statements or just the statements with questionable distributions.  He answered that he did not review all statements so he would not know the total amount of legitimate expenditures made from the account.

Baum testified that he made adjustments in the interest calculations for the two restitution payments made.  On cross examination he

testified that no adjustment was made for the $100,000 Lawyers' Fund for Client protection payment paid in October 2023, which he testified he was unaware of.

Baum was questioned on cross exam regarding the treatment of deposits into the PNC account as contained in Defendant's Exhibits B and C. Baum testified that he assessed interest to distributions from the account without considering that deposits were made that covered the distributions. Exhibit B shows that on December 18, 2015, two deposits were made into the PNC account totaling $52,136.12. On the same day, distribution was made in the same amount. Baum testified that he assessed interest on the distribution of $52,136.12 without considering the deposit because he viewed the deposit as a potential claim against the account.

Baum was also questioned about the transfer into the PNC account on August 16, 2016, in the amount of $16,500.00. (Defendant Exhibit C). During that same month transfers out were made in the total amount of $20,000.00 for which Baum assessed interest. Baum again explained that he didn't take the deposit into account when assessing interest because he considered the deposits to be contingent claims.

Plaintiff moved his exhibits into evidence including Plaintiffs Exhibit 72 which is a Release, Assignment of Rights, and Subrogation Agreement between the Plaintiff and the Lawyers' Fund for Client Protection. The Release and Assignment of Rights signed by the Plaintiff states that:

"Reimbursement from the LFCP is conditioned upon claimant's assignment to the LFCP his right to recover the sum of $100,000.00 from Dorothea Jane Kingsbury. By signing this agreement and accepting payment from the LFCP, claimant hereby assigns to the LFCP any and all claims against Dorothea Jane Kingsbury to the extent of the $100,000.00 reimbursed to claimant by the LFCP" The Release and Assignment, taking into account that the payment of $100,000.00 does not cover the entire loss sustained by the Plaintiff, further states that LFCP agrees to "withhold enforcement of its rights under this agreement until claimant recovers the entire amount of his losses."

The Court finds that the parties have agreed to the amount of money wrongfully distributed from the PNC account by the Defendant. They have agreed to the amount of restitution paid. They agree that a

payment of $100,000.00 was made to the Trust by the Lawyer's Fund for Client Protection although there is a dispute as to how this amount should be applied to a damages determination.

The parties disagree about the calculation of "pre- judgment interest" set forth by Plaintiffs expert. The Court finds that Plaintiff cites *Testamentary Trust of Hamm*, 124 Ohio App. 3d 683 (1997) as his only authority for the imposition of pre-judgment interest.

The Court finds that the *Hamm* case involved a surcharge action against the trustee of a testamentary trust. The Eleventh District Court of Appeals found that the trustee was bound to follow the requirements set forth in R.C. Chapter 2109 which specifically require a fiduciary appointed by the Court to invest funds within a reasonable time (R.C. 2109.37or R.C. 2109.371). On failure to do so, the fiduciary must account to the trust for loss of interest if found to be negligent by the court. (R.C. 2109.42). Although the court discussed in dicta the allowance of interest either at the statutory or legal rate, the court held that R.C. 2109.42 only allowed for judgment against the trustee upon a finding of negligence, which was absent in the lower court's ruling.

The Court finds that *Hamm* is not applicable to the case at bar because the Defendant is not a fiduciary appointed by this Court pursuant to R.C. Chapter 2109. This case is brought under the trust code. R.C. 5810.02 states that a trustee who commits a breach of trust is liable to the beneficiaries affected for the amount required to restore the value of the trust property to what it would have been had the breach not occurred.

The Court finds that no evidence was presented to demonstrate the full corpus of the trust and any history of investment prior to the breach. The testimony of the successor trustee is that there was an investment account with UBS and the PNC account in question. Although Baum testified that there was more in the PNC account than necessary to meet regular obligations of the trust, he admitted that he had not reviewed all PNC statements and expenditures but only the statements that contained questionable expenditures.

The Court further finds that no evidence was presented to establish what the legal rate of interest was during the time in question or to show what rate of return could reasonably be expected if the wrongful distributions had been invested.

The Court further finds that the calculation of interest presented by Plaintiff did not take into account the receipt of $100,000.00 from Lawyer's Fund for Client Protection in October 2023.

The Court finds that a large portion of the prejudgment interest claimed by the Plaintiff relates to the transaction occurring on December 18, 2014. On that date, $52,136.12 was deposited into the PNC account and the same amount was distributed out. While Baum assessed interest on the withdrawal asserting that the deposit created a contingent claim on the account, no such claim has been made and the prospect is speculative at best. Likewise, on August 16, 2016, a deposit was made into the PNC account from another account ending in — and during that same month, $19,000.00 was transferred back to the account ending in — An additional transfer out was made in the amount of $1000.00. The Plaintiff also argues that interest should be charged on the $20,000.00 from the time that it was distributed.

The Court finds that Plaintiff has not established authority for prejudgment interest. The Court finds that even if a calculation of interest is proper to restore the value of the trust property to what it would have been had the breach not occurred, the evidence presented is insufficient to make such a determination.

The Court finds that although Defendant should not have been moving funds from other accounts into the PNC account, deposited funds were withdrawn quickly and no claims have been made on those deposits which occurred in 2014 and 2016. The Court finds no reason that the deposits should not be credited against the withdrawals.

The Court finds that the parties have stipulated that $283,611.63 was wrongfully transferred out of the Trust PNC account by the Defendant. The parties further agree that restitution has been made in the amount of $76,297.32. The parties further agree that Plaintiff received an additional $100,000.00 from the Lawyers' Fund for Client Protection. The Court finds that deposits made to the PNC account on December 18, 2014 in the amount of $52,136.12 and on August 16, 2016 in the amount of $16,500.00 should be credited to the amount removed. The Court finds that the Defendant is liable to the Plaintiff for an additional $38,678.19.

The Court finds and Orders that judgment is given in the amount of $38,678.19 against the Defendant in favor of the Plaintiff. The Court further finds and Orders that the Defendant remains liable to the

Lawyers' Fund for Client Protection in the additional amount of $100,000.00 and finds that according to the LFCP Release, Assignment of Right, And Subrogation Agreement, LFCP will withhold enforcement of its rights against the Defendant until the Plaintiff has fully recovered his damages.

*Id.*

{¶5} Paul also made a claim for attorney fees pursuant to R.C. 5810.04. On October 15, 2024, the probate court held a hearing on Paul's claim. In the probate court's judgment entry regarding attorney fees, it stated:

The Court finds that by Order dated September 4, 2024, the Defendant was found to have breached her fiduciary duty, and damages were awarded in the amount of $38,678.19.

The Court finds that R.C. 5810.04 authorizes the award of costs, expenses and reasonable attorney's fees to be paid to any party by another party. The Court finds that Plaintiff was afforded the opportunity to present to the Court evidence of the fees and expenses incurred due to Defendant Kingsbury's breach of trust.

The Court finds that Plaintiff called the current Trustee, Patricia Frutig, to testify as to the amount of attorney fees and expenses she has paid from the Trust pertaining to the current litigation.

The Court finds that Frutig testified that she has paid three different sets of attorney fees including fees paid to Attorney Whipple, Attorney Kraus and to the law firm of Schneider Smeltz Speith Bell ("SSSB"). Frutig also testified about costs paid for court reporters, Plaintiff's trial expert witness and Plaintiff's attorney fee expert witness.

The Court finds that Plaintiff's expert witness Charles P. Royer testified about the reasonableness of fees paid by the Trust. Royer testified that he reviewed unredacted copies of the attorney fee invoices. Royer testified that the invoices detailed some work product and some attorney client privilege.

The Court finds that there was no testimony from Whipple, Kraus, or SSSB.

The Court finds that Plaintiff moved to admit his Exhibits 60 (Whipple Fees), 61 (Krause fees) and Exhibit 62 (SSSB fees). The Court finds that Defendant objected to the admission of these exhibits because every detail about work performed had been redacted. The Court finds that there is no description of services on any of the invoices. Defendant also objected to the admission of the exhibits on the basis of hearsay since none of the attorneys who submitted invoices testified as to their fees.

The Court finds that Defendant also objected to the payment of any fees to SSSB because they never entered an appearance in this case and never participated in any court proceedings. The Court finds that Frutig testified that they were hired in an "advisory" role to Whipple.

The Court finds that in addition to showing that the lawyer has charged his/her time and expenses at a reasonable rate, there must also be an explanation as to a legitimate purpose as to why the lawyer spent that time and incurred those costs. *Amin, Turocy & Watson LLP v Just Funky LLC*, 2024-Ohio-1368, (8th Dist.). "In an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney." *Koblentz & Koblentz v. Ferrante*, 8th Dist. Cuyahoga No. 86969, 2006-Ohio-1740, ¶ 24, (8th Dist.), quoting *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 653 N.E.2d 1245 (10th Dist.1995), citing *Jacobs v. Holston*, 70 Ohio App.2d 55, 434 N.E.2d 738 (6th Dist.1980).

The Court finds that no evidence has been presented, either through attorney testimony or through any description of work performed on the submitted invoices, to show legitimate purpose or reasonableness of work hours devoted to the case by any of the attorneys who billed for the work. While it is customary and reasonable for work product and privilege entries to be redacted from an invoice, a complete redaction of services performed renders this Court unable to determine the reasonableness of fees charged.

The Court finds that evidence was presented of costs incurred including $8646.00 for fees charged by Plaintiff's trial expert Baum Blaugrund. LLC, $1342.80 for Court reporter services including deposition of Defendant and trial. The Court finds that these expenses should be allowed and charged against the Defendant.

The Court finds that Plaintiff also requests costs for the attorney fee expert. The Court finds that the expert's testimony was rendered meaningless by Plaintiff's failure to present any evidence of work performed by any of the attorneys in this case.

The Court finds and Orders that the claim for attorney fees and reimbursement for the attorney fees expert are denied. The Court further finds and Orders that Plaintiff is awarded costs in the amount of $9988.80 for which judgment shall render against the Defendant.

Judgment Entry Case No. 2018ADV237555 (Oct. 31, 2024).

{¶6} Paul filed this appeal from the probate court's September 4, 2024 and October 31, 2024 judgments, assigning three errors for our review:

1. The trial court erred when it offset the plaintiff-appellant's damages and refused to apply the collateral source rule;

2. The trial court erred in failing to award prejudgment interest to the plaintiff-appellant's damages award, which stems from a criminal act, but also a tort; and

3. The trial court erred when it did not grant plaintiff-appellant the entirety of the attorneys' fees and costs requested at the October 15, 2024 hearing.

## II.  Collateral-Source Rule

{¶7} In Paul's first assignment of error, he argues that the trial court erred when it offset Kingsbury's damages and refused to apply the collateral-source rule. Paul contends that the collateral-source rule prevents a tortfeasor from benefitting

from payments made to the plaintiff by third parties, whether intentionally or unintentionally. He further contends that the rule ensures that the tortfeasor bears the full burden of their actions and does not gain an advantage from the plaintiff's receipts of benefits from other sources. "Generally, an order of restitution is reviewed for an abuse of discretion." *State v. Pierce*, 2019-Ohio-3762, ¶ 28 (8th Dist.), citing *State v. Santorella*, 2018-Ohio-274, ¶ 27 (8th Dist.).

{¶8} As it is applied to this case, Paul argues that the trial court erred in offsetting Kingsbury's financial responsibility by applying the $100,000 payment from the Lawyers' Fund for Client Protection ("LFCP"). Paul suggests that Kingsbury should not benefit from having her damages reduced by $100,000 in light of Paul receiving the money from the LFCP. However, Paul's assertions are without merit. Effective as of April 7, 2005, the General Assembly passed R.C. 2315.20. "This statute allows the defendant in any tort action to introduce 'evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury * * *.'" *Robinson v. Bates*, 2006-Ohio-6362, ¶ 14.

{¶9} At trial, Paul moved into evidence his exhibits: a release, assignment of rights, and subrogation agreement between him and the LFCP. The release and assignment of rights signed by Paul states that

> reimbursement from the LFCP is conditioned upon claimant's assignment to the LFCP his right to recover the sum of $100,000.00 from Dorothea Jane Kingsbury. By signing this agreement and

accepting payment from the LFCP, claimant hereby assigns to the LFCP any and all claims against Dorothea Jane Kingsbury to the extent of the $100,000.00 reimbursed to claimant by the LFCP.

The release and assignment, taking into account that the payment of $100,000 does not cover the entire loss sustained by a Plaintiff, further states that LFCP agrees to "withhold enforcement of its rights under this agreement until claimant recovers the entire amount of his losses."

{¶10} In accordance with the agreement that Paul signed, the probate court held that Kingsbury remains liable to the LFCP "in the additional amount of $100,000.00 and finds that according to the LFCP Release, Assignment of Rights, and Subrogation Agreement, LFCP will withhold enforcement of its rights against the Defendant until the Plaintiff has fully recovered his damages." Judgment Entry Case No. 2018ADV237555 (Sept. 4, 2024).

{¶11} Thus, Kingsbury remains liable for $100,000. The trial court did not offset her financial responsibility and she did not gain an advantage from the LFCP's payment to Paul as he argues. Additionally, "[a]ll restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or the victim's estate against the offender." R.C. 2929.18(A)(1). The restitution the trial court ordered should be credited against any recovery ordered by the probate court.

{¶12} Further, Paul argues that the trial court erred in applying a $68,363.12 offset because Kingsbury paid that amount to Paul from other third-

party accounts that did not belong to her. At trial, plaintiff's expert witness Lewis Baum ("Baum"), a forensic accountant who specializes in litigation consulting, testified that he reviewed the trust agreements, Kingsbury's deposition, and bank statements in preparation for his testimony at trial. Baum testified that there were transfers and withdrawals from Paul's account totaling $283.611.63. Baum also testified that there was money transferred from Paul's accounts and went to different clients' accounts. Also, from time to time, money from other clients would be deposited into Paul's accounts. Tr. 141. Baum also noted that there were payments from Paul's account for dentist and medical bills. On cross-examination by Kingbury's attorney, Baum testified that he did not review all of the statements from Paul's account and was unaware of the actual amount that was moved from other victims' accounts to Paul's accounts.

{¶13} The probate court in its judgment entry echoed this when it stated:

> The Court finds that although Defendant should not have been moving funds from other accounts into the PNC account, deposited funds were withdrawn quickly and no claims have been made on those deposits which occurred in 2014 and 2016. The Court finds no reason that the deposits should not be credited against the withdrawals.

Judgment Entry Case No. 2018ADV237555 (Sept. 4, 2024).

{¶14} Before the trial in this instant case, the criminal trial court issued a nunc pro tunc entry to amend the restitution order, stating in part:

> With specific regard to victims Janis Paul and Robert Paul, whose restitution amounts exceeded the maximum recovery from the fund,

> the court finds that they are entitled to the restitution funds received and held by the Cuyahoga County Probation Department.
>
> Therefore, the Cuyahoga County Probation Department is ordered to disperse the funds held under case CR-636132 in the form of two separate checks made out to the following victims in the following amounts: $57,435.51 to the Janis L. Paul Special Needs Trust, C/O Trustee Patricia R. Frutig and $74,297.32 to the Robert L. Paul Special Needs Trust, C/O Trustee Patricia R. Frutig, with completed checks to be provided to Cuyahoga County APA JD May for hand-delivery.

Journal Entry No. 181279366 (May 1, 2024).

{¶15} In the trial court's journal entry, it issued $74,297.23 as restitution to Paul, the amount Paul argues should not be offset in the probate court's decision. However, Paul did not object to the trial court's order. Where an appellant fails to object to the order of restitution or the amount of restitution, the appellant waives all but plain error. *State v. McLaurin*, 2016-Ohio-933, ¶ 10 (8th Dist.).

{¶16} Under Crim.R. 52(B), plain error affecting substantial rights may be noticed even though it was not brought to the court's attention. *Id*. at ¶ 11. "'[A]ppellate courts are to notice plain error only in exceptional circumstances in order to prevent a manifest miscarriage of justice.'" *State v. Keslar*, 2019-Ohio-540, ¶ 21 (8th Dist.), quoting *State v. Long*, 53 Ohio St.2d 91, 95 (1978). If Paul disputed the restitution order made by the trial court, the trial court would have been required to hold an evidentiary hearing. *See* R.C. 2929.18(A)(1); *State v. Bergstresser*, 2024-Ohio-3299, ¶ 36 (8th Dist.); and *State v. Milton*, 2019-Ohio-

3900, ¶ 23 (10th Dist.). Paul has not demonstrated that a manifest miscarriage of justice occurred.

**{¶17}** Therefore, Paul's first assignment of error is overruled.

## III. Prejudgment Interest Award

**{¶18}** In Paul's second assignment of error, he argues that the trial court erred in failing to award prejudgment interest, which stems from a criminal act and a tortious act. "Our review of the trial court's decision on prejudgment interest is confined to deciding if the court abused its discretion." *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 306 (2d Dist. 2000). *See, e.g., Dayton Power & Light Co. v. Chapman*, 89 Ohio App.3d 444, 446 (2d Dist. 1993).

**{¶19}** "Damages for a breach of trust are premised on the idea that 'the trust should be restored to the position it would have been in had the harm not occurred.'" *Keybank Natl. Assn. v. Thalman*, 2018-Ohio-3367, ¶ 30 (8th Dist.), quoting General Comment to R.C. 5810.01. "Thus, the damages to be paid by a trustee who commits a breach of trust is '[t]he amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred.'" *Id. See also* R.C. 5810.02(A). Damages resulting from Kingsbury's breach of fiduciary duty are similar: "A trustee who commits a breach of trust is * * * chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had

been properly administered." *Id.*, quoting Restatement of the Law 3d, Trusts, Section 205(b) (1990).

{¶20} Baum, Paul's expert, was unable to definitively testify to the probate court as to the amount of prejudgment interest owed. The probate court in its judgment entry stated verbatim:

> Baum testified that he made adjustments in the interest calculations for the two restitution payments made. On cross examination he testified that no adjustment was made for the $100,000 Lawyers' Fund for Client protection payment paid in October 2023, which he testified he was unaware of.
>
> Baum was questioned on cross exam regarding the treatment of deposits into the PNC account as contained in Defendant's Exhibits B and C. Baum testified that he assessed interest to distributions from the account without considering that deposits were made that covered the distributions. Exhibit B shows that on December 18, 2015, two deposits were made into the PNC account totaling $52,136.12. On the same day, distribution was made in the same amount. Baum testified that he assessed interest on the distribution of $52,136.12 without considering the deposit because he viewed the deposit as a potential claim against the account.
>
> Baum was also questioned about the transfer into the PNC account on August 16, 2016, in the amount of $16,500.00. (Defendant Exhibit C). During that same month transfers out were made in the total amount of $20,000.00 for which Baum assessed interest. Baum again explained that he didn't take the deposit into account when assessing interest because he considered the deposits to be contingent claims.

Judgment Entry Case No. 2018ADV237555 (Sept. 4, 2024).

{¶21} The burden, at trial, was on Paul to establish and provide evidence of the prejudgment interest owed on the account. He did not provide such evidence. *Thalman* at ¶ 30.

**{¶22}** Therefore, Paul's second assignment of error is overruled.

## IV.   Attorney Fees

**{¶23}** In Paul's third assignment of error, he argues that the trial court erred when it did not grant him the entirety of the attorney fees and costs requested under R.C. 5810.04.  We review an award under R.C. 5810.04 for an abuse of discretion. *Jakubs v. Borally*, 2015-Ohio-2696, ¶ 12 (8th Dist.).  *See also Wills v. Kolis*, 2010-Ohio-4351, ¶ 52 (8th Dist.).

**{¶24}** Paul's request for attorney fees were denied by the probate court.  The probate court found that the expert's testimony was rendered meaningless by Paul's failure to present any evidence of the work performed by any of the attorneys in this case.  Additionally, the probate court found that no evidence had been presented, either through attorney testimony or through any description of work performed on the submitted invoices, to show legitimate purpose or reasonableness of work hours devoted to the case by any of the attorneys who billed for the work.  The probate court noted that while it is customary and reasonable for work-product and privilege entries to be redacted from an invoice, a complete redaction of services performed rendered the probate court unable to determine the reasonableness of the fees charged.

**{¶25}** "'[A]ttorney fees are not justified merely because the lawyer has charged his [or her] professional time and expenses at reasonable rates; a legitimate purpose must also explain why the lawyer spent that time and incurred

those costs.'" *Amin, Turocy & Watson LLP v. Just Funky LLC*, 2024-Ohio-1368, ¶ 12 (8th Dist.), quoting *Disciplinary Counsel v. Johnson*, 2007-Ohio-2074, ¶ 71. "'[I]n an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney.'" (Cleaned up.) *Id.*, quoting *Koblentz & Koblentz v. Ferrante*, 2006-Ohio-1740, ¶ 24 (8th Dist.).

{¶26} Paul argues that the probate court could have requested an in camera inspection before rendering its decision and that the information sought by the probate court is considered protected by attorney-client privilege. He cites *State ex rel. Pietrangelo v. Avon Lake*, 2016-Ohio-2974, ¶ 10, to support his contention. However, Paul misstates the Court's decision in this case. While the Court stated "that the narrative portions of itemized attorney-fee billing statements containing descriptions of legal services performed by counsel are protected by the attorney-client privilege," *id.*, citing *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 2011-Ohio-6009, ¶ 28-29, "[o]ther information on the billing statements — *e.g.*, the general title of the matter being handled, the dates the services were performed, and the hours, rate, and money charged for the services — is considered nonexempt and must be disclosed." *Id.*, citing *State ex rel. Anderson v. Vermilion*, 2012-Ohio-5320, ¶ 15.

{¶27} The probate court in its judgment entry stated: "The Court finds that the expert's testimony was rendered meaningless by Plaintiff's failure to present

any evidence of work performed by any of the attorneys in this case." Judgment Entry Case No. 2018ADV237555 (Oct. 31, 2024). Paul has not demonstrated that the probate court abused its discretion.

**{¶28}** Therefore, Paul's third assignment of error is overruled.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
DEENA R. CALABRESE, J., CONCUR